## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

|  |  |
|---|---|
| INSIGNIA SYSTEMS, INC.<br>6470 Sycamore Court North<br>Maple Grove, Minnesota 55369,<br><br>     Plaintiff,<br><br>  v.<br><br>NEWS CORPORATION, LTD.<br>2 Holt Street,<br>Sydney, 2010 Australia;<br><br>NEWS AMERICA MARKETING<br>IN-STORE, INC.<br>1211 Avenue of the Americas<br>New York, New York 10036, and<br><br>ALBERTSON'S INC.<br>150 E. Parkcenter Blvd.<br>Boise, Idaho 83706,<br><br>     Defendants. | CIVIL NO.: 04·4213JRT/FLN<br><br><br>COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF<br><br>JURY DEMANDED |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

The Plaintiff, Insignia Systems, Inc. ("Insignia"), through its attorneys, brings this action for antitrust violations under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, Section 3 of the Clayton Act, 15 U.S.C. § 14, and Sections 325D.51, 325D.52 and 325D.53 of the Minnesota Antitrust Act, Minn. Stat. §§ 325D.51, 325D.52, and 325D.53, against defendants News Corporation, Ltd. ("News Corp."), its wholly owned subsidiary, News America Marketing In-Store, Inc. ("NAMI"), and Albertson's Inc. ("Albertson's"). The Plaintiff also alleges false and deceptive advertising under the Lanham Act, 15 U.S.C. § 1125(a) and the Minnesota

SCANNED

SEP 2 3 2004

U.S. DISTRICT COURT MPLS

Deceptive Trade Practices Act, Section 325D.44, Minn. Stat. § 325D.44, against defendants News Corp. and NAMI.

1.    NAMI is the dominant provider of in-store advertising and promotion products and services to retailers and consumer packaged goods companies ("CPGs").   NAMI has acquired and maintained dominance through various wrongful acts designed to harm Insignia in the in-store advertising and promotion products and services market.   Based on information and belief, since November 14, 2002, NAMI has entered exclusive contracts with retailers, paid large economically unjustified up-front fees and guaranteed payments to retailers to induce them to enter such contracts, insisted on the right of first refusal at retailers for any new in-store advertising products, bundled and predatorily priced its products, hacked into a competitor's computer files, and unfairly disparaged Insignia's products.   In addition, NAMI has instigated and conspired with Albertson's and other retailers to boycott Insignia in an effort to exclude a principal competitor.   By virtue of this conduct, NAMI has acquired and maintained the power to exclude competitors and raise prices to CPGs.   Insignia has been harmed in its in-store advertising and promotion business, as a result of NAMI's anticompetitive conduct.   NAMI's illegal activity has also harmed consumers who purchase groceries, health and beauty care, and drug products at retail stores by reducing price and quality competition in selling in-store advertising and promotion products and services and restricting in-store advertising innovation and the types of information available to consumers.

2.    Since November 14, 2002, NAMI has made repeatedly false and misleading statements about the nature, qualities and character of its own and about Insignia's in-store advertising and promotion products and services.   NAMI has falsely stated that Insignia's POPSign program has a compliance rate of 20 percent or less; that Insignia's POPSign program

2

cannot be tied into other in-store advertising programs; and that Insignia's POPSign program has no aisle management and traffic building strategies. NAMI has falsely claimed to CPGs and retailers that it had authorization to remove Insignia's signs even when Insignia had valid contracts with the retailer to deliver its signs for placement in the retailer's store. These false and deceptive statements were made to deceive retailers and CPGs into believing Insignia's products are inferior to NAMI's products, and are not authorized by certain retailers. Insignia is being irreparably injured as a result of these statements.

## THE PARTIES

3.      Insignia is a Minnesota corporation headquartered in Maple Grove, Minnesota. Insignia produces and markets in-store advertising and promotion products and services to retailers and CPGs from its facility in Maple Grove, Minnesota. Insignia's products include POPSign, a shelf-edge advertising and promotion program. Insignia competes against NAMI in selling POPSign to CPGs for use in grocery and drug retail stores in various local and regional markets and throughout the United States. In 2003, Insignia reported sales of approximately $22 million.

4.      Defendant News Corp. is an Australian corporation with its principal place of business in Sydney, Australia. News Corp. is a vertically integrated media company engaged in film distribution, television broadcasting, satellite and cable broadcasting, and film entertainment. Through its wholly owned subsidiary, NAMI, News Corp. is engaged in the in-store advertising and promotion business. On information and belief, in 2003 News Corp. reported sales of approximately $21 billion.

5.      NAMI is a Delaware corporation with its principal place of business in New York, New York. NAMI's in-store advertising and promotion products include SmartSource

3

Shelftalk, SmartSource Coupon Machine, SmartSource Price Pop Guaranteed, SmartSource Carts, and SmartSource Floortalk. NAMI competes against Insignia in selling in-store advertising and promotion products and services to CPGs for use in grocery and drug retail stores in various local and regional markets and throughout the United States.

6. Albertson's is a Delaware corporation with its principal place of business in Boise, Idaho. Albertson's is one of the world's largest food and drug retailers with over 2,500 retail stores in 37 states. In 2003, Albertson's reported sales of about $35 billion.

### JURISDICTION, VENUE AND INTERSTATE COMMERCE

7. This action is brought under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2; and Sections 3 and 4 of the Clayton Act, 15 U.S.C. §§ 14 and 15, to recover treble damages for injuries caused to Insignia's business and property by NAMI and Albertson's. Insignia also seeks injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26, to enjoin NAMI's and Albertson's ongoing unlawful actions. In addition, Insignia seeks injunctive relief and damages against NAMI under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and Sections 34(a) and 35(a) of the Lanham Act, 15 U.S.C. §§ 1116(a) and 1117(a).

8. This Court has jurisdiction over Insignia's antitrust claims pursuant to 28 U.S.C. § 1331 in that the claims arise under the Sherman Act, 15 U.S.C. §§ 1 and 2, the Clayton Act, 15 U.S.C. §§ 14 and 15, and the Lanham Act, 15 U.S.C. § 1125(a). This Court has jurisdiction over the state claims which arise under the laws of Minnesota pursuant to the principles of supplemental jurisdiction, 28 U.S.C. § 1367.

9. News Corp. and NAMI transact business and are found in this district. Venue is therefore proper in this district pursuant to the Clayton Act, 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(b) and (c).

4

10.     Albertson's transacts business and is found in this district.  Venue is, therefore, proper in this district pursuant to the Clayton Act, 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(b) and (c).

11.     Insignia, News Corp., NAMI and Albertson's are engaged in interstate commerce and in activities substantially affecting interstate commerce.  NAMI and Insignia provide in-store advertising and promotion products to thousands of retail stores in local and regional markets and throughout the United States, and they sell advertising and promotion products and services to CPGs for use in local and regional markets and throughout the United States.  Albertson's operates food and drug retail stores in local and regional markets and throughout the United States.

## FACTS GIVING RISE TO THIS CAUSE OF ACTION

### Antitrust Violations

12.     In the Summer of 1997, Insignia began providing in-store advertising and promotion products and services when it developed its POPSign program.  POPSign is an innovative, in-store, shelf-edge program which enables CPGs to deliver valuable brand information and retail prices to consumers at the point-of-purchase.  The brand information provided includes product use and features, nutritional information, advertising tag lines and product images.  This brand information is typically combined with the retailer's store specific prices and displayed on the retailer's unique sign format that includes the retailer's logo, headline, and store colors.

13.     Insignia's POPSign program offers special features such as Advantage and Custom Advantage Headers that allow manufacturers to add visibility and highlight additional

information at-shelf. The signs are placed directly in front of the manufacturer's product in the retailer's store.

14.     Using proprietary technology, Insignia collects data from both manufacturers and retailers to use in POPSign. After the data are collected, Insignia formats, prints and delivers the signs to retailers for display. Retail store personnel place the signs at the shelf for two-week or four-week display cycles. Insignia charges manufacturers a fee for the number of signs placed, per cycle, and per store, and pays retailers a flat fee for the signs displayed in each of their stores.

15.     Based on information and belief, NAMI is the dominant provider of in-store advertising and promotion products and services sold to CPGs and placed in retail stores (also herein referred to as the "in-store advertising and promotion market"). NAMI provides CPGs a broad line of in-store advertising and promotion products and services and contracts to place these products in over 35,000 retail store locations throughout the United States. Access to retailers is necessary to compete in the in-store advertising and promotion market.

16.     Since November 14, 2002, NAMI has engaged in a campaign to eliminate competition from Insignia and harm Insignia in its in-store advertising and promotion business. NAMI's unlawful conduct has harmed Insignia and reduced price and quality competition in in-store advertising and promotion in general.

17.     Based on information and belief, since November 14, 2002, NAMI has entered exclusive long-term contracts with retailers that preclude the retailer from dealing with a competitor of NAMI for in-store advertising and promotion products and services. Upon information and belief, NAMI makes large economically unjustified up-front payments and guaranteed payments to retailers to induce them to enter into these exclusive contracts.

18.     Upon information and belief, NAMI instigated and spearheaded a boycott by Albertson's and other retailers of Insignia. Albertson's and other retailers, at the urging and with the participation of NAMI, combined and conspired to deal only with NAMI and not to deal with Insignia for in-store advertising and promotion products and services.

19.     Upon information and belief, Albertson's has agreed and conspired to assist NAMI in its efforts to exclude Insignia from the in-store advertising and promotion market by encouraging and accepting unusually high and economically unjustified up-front payments in return for agreeing to deal only with NAMI.

20.     In addition to exclusive contracts and a boycott, on information and belief, NAMI has engaged in other anticompetitive conduct and wrongful acts, including:

A.     Falsely disparaging and misrepresenting to retailers Insignia's in-store, advertising and promotion products and services and their performance in order to encourage retailers to enter into exclusive agreements with NAMI that exclude Insignia;

B.     Falsely disparaging and misrepresenting to CPGs Insignia's in-store advertising products and services and their performance in order to chill and reduce CPGs' purchases of Insignia's in-store advertising and promotion products and services;

C.     Threatening to remove and removing from retailers' stores any of Insignia's signs and falsely representing to CPGs that NAMI had authorization from the retailer to tear down Insignia's signs from retailers' shelves even though Insignia had contractual rights to deliver its in-store

7

advertising and promotion products and services for use at such retailers' stores;

D.    Threatening retailers that NAMI would have fewer funds and profits to share with retailers if they did not exclude Insignia and any other competitor offering in-store advertising and promotion products and services to CPGs;

E.    Offering CPGs bundled packages of coupons distributed as inserts in newspapers and magazines and in-store advertising and promotion products and services and making substantial discounts contingent upon the CPGs agreeing not to purchase any in-store advertising or promotion products or services from Insignia;

F.    Paying retailers for advertising and promotion services that were never placed in their stores, including SmartSource Price Pop Guaranteed signs, in order to induce retailers to agree to exclude Insignia and foreclose it from offering its in-store advertising and promotion products and services to CPGs for use in their stores;

G.    Misrepresenting to CPGs and retailers NAMI's product offerings and planned introductions of products and innovations;

H.    Hacking into a competitor's computer system to gain an unfair competitive advantage against competitors such as Insignia and FloorGraphics, Inc.;

I.      Making false and misleading statements to CPGs and retailers about Insignia's financial condition and its long-term commitment to the in-store advertising and promotion market;

J.      Insisting on the right of first refusal from retailers for any new in-store advertising and promotion products and services offered to the retailer by a competitor.

21.     On information and belief, NAMI has used long-term exclusive contracts, a boycott and other wrongful conduct to acquire and maintain monopoly power and to attempt to monopolize and unreasonably restrain trade in providing in-store advertising and promotion products and services to retailers selling grocery, health and beauty care, and drug products in various local and regional markets and throughout the United States.

22.     Through its illegal exclusive dealing agreements, boycott and other wrongful conduct, NAMI has substantially foreclosed Insignia from selling its in-store advertising and promotion products and services for use at retailers in various local and regional markets and throughout the United States.

23.     The ongoing illegal acts of defendants have harmed, and unless enjoined, will continue to harm competition by denying CPGs and retailers the benefits of vigorous in-store advertising and promotion competition, and the benefits that would flow from such competition, such as better informed consumers, enhanced product selection, increased supply, better quality, and lower prices.   Consumers have been harmed through reduced in-store information and advertising for CPGs' products and through reduced choices and higher prices.

24.     As a further result of the illegal acts of defendants, plaintiff Insignia has been severely damaged through lost sales and profits, higher costs, loss of goodwill, and a substantial decline in the value of its publicly traded stock.

## False Advertising

25.     Compliance rate is the number of an in-store advertisers' signs with distribution on a specific product actually installed in-store versus the number contracted for by CPGs. Compliance rates are important to CPGs because they indicate the percent of their advertising that is actually seen by the consuming public. Producers of in-store advertising signs generally rely on outside audits to verify the compliance rate for their signs.

26.     Starting in or about February 2003, NAMI has falsely represented to CPGs and retailers the compliance rate of Insignia's POPSign at-shelf signage program. NAMI sent letters to CPGs falsely stating that compliance rates for its SmartSource Price Pop Guaranteed signage was 90-95 percent while the compliance rate for Insignia's POPSign was less than 20 percent.

27.     NAMI has falsely represented to CPGs and retailers that its SmartSource Price Pop Guaranteed program has guaranteed compliance.

28.     NAMI has falsely represented to CPGs and retailers that Insignia's POPSign cannot tie in with advertising and promotion contained in coupons or other in-store programs.

29.     NAMI has falsely represented to CPGs and retailers that Insignia's POPSign has no aisle management and traffic building strategies.

30.     NAMI has falsely stated to CPGs and retailers that it had authorization to remove Insignia's signs even when Insignia had valid contracts with the retailer to deliver its signs for placement in the retailer's store.

31.     NAMI has made false and misleading statements to CPGs and retailers about Insignia's financial condition and its long-term commitment to the in-store advertising and promotion market.

32.     NAMI's false and misleading advertising campaign against Insignia is pervasive. It not only makes false and misleading claims about its own products, it falsely disparages Insignia's products. NAMI intentionally continues to make false statements about Insignia's POPSign program to mislead CPGs and retailers to subscribe to NAMI's SmartSource Price Pop Guaranteed signs rather than Insignia's POPSign. Injunctive relief from this Court is necessary to prevent further consumer deception and harm to Insignia.

## THE RELEVANT MARKETS

### Product Markets

33.     For purposes of each of plaintiff's antitrust claims herein, the relevant line of commerce in which to assess the competitive effects of the defendants' wrongful conduct is the market for in-store advertising and promotion products and services sold to CPGs and placed in retail stores.

34.     Providers of advertising and promotion products and services placed outside the retail store do not constrain the prices charged by providers of in-store advertising and promotion products and services, such as at-shelf signage, shelf-delivered coupons, floor advertising, and shopping cart ads. Studies show that approximately 70 percent of brand purchase decisions are made in-store. CPGs do not switch from in-store advertising and promotion to other forms of advertising and promotion in response to significant and sustained price increases in in-store advertising and promotion products and services.

11

**Geographic Markets**

35.     The entire United States and each Metropolitan Statistical Area in the United States are relevant geographic markets in which to assess the competitive effects of defendants' wrongful conduct in the market for in-store advertising and promotion products and services provided to retailers and sold to CPGs.

36.     Based on information and belief, no imports of in-store advertising and promotion products and services are sold to CPGs by companies located outside of the United States.

**Concentration And Entry Conditions**

37.     The relevant markets are, and at all relevant times have been, highly concentrated. NAMI dominates these markets. Retail stores are not a viable alternative to third party providers for in-store advertising and promotion products and services. Retailers are limited to providing in-store advertising and promotion products and services only for their own private labels for use in their own stores, while third party providers can offer CPGs access to major supermarket and drug store chains throughout the United States. Retailers do not constrain prices charged by third party providers of in-store advertising and promotion products and services because retailers cannot effectively compete with third-party providers for CPGs' business. Plaintiff Insignia, along with Floorgraphics, Inc., pose the only significant competition to NAMI in this market.

38.     Entry would not be timely, likely nor sufficient to deter the exercise of market power in the relevant markets. Potential entrants face daunting barriers in attempting to create a network of retail stores where their in-store advertising and promotion products and services can be displayed. In addition, Defendant NAMI's conduct, including, but not limited to, its widespread unlawful use of long-term exclusive contracts with 35,000 retail stores, has greatly increased entry barriers and prevented entry and expansion by actual and potential competitors.

## COUNT ONE

## SHERMAN ACT SECTION 2 – UNLAWFUL MONOPOLIZATION
### (15 U.S.C. § 2)

39.     Plaintiff realleges and incorporates as though fully set forth herein the allegations contained in paragraphs 1 through 38 of this Complaint.

40.     Defendant NAMI has a dominant share of sales in the relevant markets and has had monopoly power in those markets.

41.     Defendant NAMI's monopoly position has been acquired and maintained through exclusionary, predatory and other unjustified business conduct, as opposed to a superior product, business acumen, or historic accident.

42.     Defendant NAMI has acquired and sold the relevant products in interstate commerce and has engaged in the exclusionary and predatory conduct described herein through interstate channels.

43.     If not enjoined, Defendant NAMI's unlawful exclusionary and predatory conduct will continue, with the results, among others, that Insignia will be frozen out of the relevant markets, CPG customers for the relevant products will have reduced choices and pay higher prices; and consumers at supermarkets and drug stores will be deprived of material in-store information, and price and non-price competition that would otherwise benefit them.

44.     As a direct and proximate result of Defendant NAMI's unlawful conduct, Insignia has been injured in its business and property in an amount to be proven at trial.  Defendant NAMI's unlawful activity has directly injured Insignia by harming Insignia as a competitor, and by obstructing Insignia's ability to offer competing services at retail stores in the relevant markets that have been affected by Defendant NAMI's unlawful conduct, thereby diminishing Insignia's profits and value as an enterprise.

13

## COUNT TWO

## SHERMAN ACT SECTION 2 – ATTEMPTED MONOPOLIZATION
### (15 U.S.C. § 2)

45.     Plaintiff realleges and incorporates as though fully set forth herein the allegations contained in paragraphs 1 through 44 of this Complaint.

46.     Defendant NAMI has acquired and sold the relevant products in interstate commerce and has engaged in the exclusionary and predatory conduct described herein through interstate channels.

47.     Defendant NAMI's exclusionary and predatory conduct as described above has been undertaken with the specific intent to create a monopoly in each of the relevant markets.

48.     If not enjoined, a dangerous probability exists that Defendant NAMI's unlawful predatory and exclusionary conduct will succeed in creating and maintaining a monopoly in the relevant markets, with the results, among others, that Insignia will be frozen out of the relevant markets; CPG customers for the relevant products will have reduced choices and pay higher prices; and consumers at supermarkets and drug stores will be deprived of material in-store information and price, and non-price, competition that would otherwise benefit them.

49.     As a direct and proximate result of Defendant NAMI's unlawful conduct, Insignia has been injured in its business and property in an amount to be proven at trial.  Defendant NAMI's unlawful activity has directly injured Insignia by harming Insignia as a competitor, and by obstructing Insignia's ability to offer competing services at retail stores in the relevant markets that have been affected by defendants' unlawful conduct, thereby diminishing Insignia's profits and value as an enterprise.

## COUNT THREE

## SHERMAN ACT SECTION 1 – UNLAWFUL BOYCOTT
## (15 U.S.C. § 1)

50.     Plaintiff realleges and incorporates as though fully set forth herein the allegations contained in paragraphs 1 through 49 of this Complaint.

51.     Defendant NAMI is engaged in interstate commerce and NAMI's combination and conspiracy with Albertson's and other retailers to boycott Insignia has been in the course of interstate commerce.

52.     Defendant NAMI has a dominant position in the in-store advertising and promotion products and services market and access to retailers is necessary to compete in this market.

53.     Defendants NAMI, Albertson's and the other retailers' boycott as described above has been undertaken with the purpose and intent of excluding Insignia from the in-store advertising and promotion products and services market.

54.     If not enjoined, NAMI, Albertson's and the other retailers' illegal boycott will force Insignia from the market and lessen competition in the in-store advertising and promotion products and services market; CPG customers will have reduced choices and pay higher prices; and consumers at supermarkets and drug stores will be deprived of material in-store product information, and price and non-price competition that would otherwise benefit them.

55.     As a direct and proximate result of defendants NAMI, Albertson's and the other retailers' unlawful boycott, Insignia has been injured in its business and property in an amount to be proven at trial.  Defendants NAMI, Albertson's and the other retailers unlawful boycott has directly injured Insignia by harming Insignia as a competitor and by obstructing Insignia's ability

15

to offer competing services to retail stores in the relevant markets that have been affected by the boycott, thereby diminishing Insignia's profits and value as an enterprise.

## COUNT FOUR

### SHERMAN ACT SECTION 1 – UNLAWFUL EXCLUSIVE DEALING
### (15 U.S.C. § 1)

56.     Plaintiff realleges and incorporates as though fully set forth herein the allegations contained in paragraphs 1 through 55 of this Complaint.

57.     Defendant NAMI is engaged in interstate commerce and NAMI's exclusive agreements with retail store chains have been in the course of interstate commerce.

58.     NAMI's exclusive agreements with retailers have been for the provision of goods and services or other commodities (including signs, coupon dispensers and other in-store advertising vehicles) for use, consumption, or resale within the United States.

59.     The effect of each of NAMI's exclusive agreements with retailers and the effect of them in the aggregate is to substantially lessen competition in the relevant markets.

60.     As a direct and proximate result of Defendant NAMI's unlawful conduct, Insignia has been injured in its business and property in an amount to be proven at trial. Defendant's unlawful activities have directly injured Insignia by harming Insignia as a competitor and by obstructing Insignia's ability to offer competing services at retail stores in the relevant markets that have been affected by defendants' unlawful conduct, thereby diminishing Insignia's profits and value as an enterprise.

61.     If not enjoined, defendants' unlawful exclusive dealing arrangements will continue, with the results that Insignia will be frozen out of the relevant markets; CPG customers for the relevant products will have reduced choices and pay higher prices; and consumers at

supermarkets and drug stores will be deprived of material in-store product information and price, and non-price, competition that would otherwise benefit them.

## COUNT FIVE

### CLAYTON ACT SECTION 3 – UNLAWFUL EXCLUSIVE DEALING
### (15 U.S.C. § 14)

62.     Plaintiff realleges and incorporates as though fully set forth herein the allegations contained in paragraphs 1 through 61 of this Complaint.

63.     Defendant NAMI is engaged in interstate commerce and NAMI's exclusive agreements with retailers have been in the course of interstate commerce.

64.     NAMI's exclusive agreements with retailers have been for the provision of, among other things, goods, wares, merchandise, machinery, supplies or other commodities (including signs, coupon dispensers and other in-store advertising vehicles) for use, consumption, or resale within the United States.

65.     The effect of each of NAMI's exclusive agreements with retailers and the effect of them in the aggregate is to substantially lessen competition and to tend to create a monopoly in the relevant markets.

66.     As a direct and proximate result of defendants' unlawful conduct, Insignia has been injured in its business and property in an amount to be proven at trial.  Defendants' unlawful activities have directly injured Insignia by harming Insignia as a competitor and by obstructing Insignia's ability to offer competing services at retail stores in the relevant markets that have been affected by defendants' unlawful conduct, thereby diminishing Insignia's profits and value as an enterprise.

67.     If not enjoined, defendants' unlawful exclusive dealing arrangements will continue, with the results that Insignia will be frozen out of the relevant markets; CPGs'

17

customers for the relevant products will have reduced choices and pay higher prices; and consumers at supermarkets and drug stores will be deprived of material in-store product information and price, and non-price, competition that would otherwise benefit them.

## COUNT SIX

### THE LANHAM ACT:  FALSE ADVERTISING
### 15 U.S.C. § 1125(a)

68.     Plaintiff realleges and incorporates as through fully set forth herein the allegations contained in paragraphs 1 through 67 of this Complaint.

69.     In violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Defendant NAMI has made repeated false and misleading descriptions of fact and false and misleading statements of fact regarding Insignia and the nature, qualities and character of both its own SmartSource Price Pop Guaranteed program and Insignia's POPSign program.  These false and misleading statements by NAMI have taken the form of actual misstatements, misleading statements and failures to disclose.

70.     Defendant NAMI's false and misleading descriptions of fact and representations of fact, have occurred repeatedly since November 14, 2002.  Defendant NAMI's misleading and deceptive descriptions and misrepresentations of fact have impacted the sale of goods and services that are in, or affect, interstate commerce.

71.     Defendant NAMI's false and misleading statements have caused CPGs and retailers to be confused, misled, and deceived about the nature, qualities and character of Insignia's in-store advertising and promotion products and services.  Defendant NAMI's false and misleading statements are material because they have influenced and are likely to influence the decisions of:  (a) CPGs to purchase Insignia's in-store advertising and promotion products

and services; and (b) retailers to grant or honor the right to allow Insignia to place its in-store advertising and promotion products and services for use in their respective retail stores.

72.     As a result of Defendant NAMI's false and misleading statements, plaintiff Insignia has suffered economic injury, loss of goodwill, and other injuries in an amount to be determined at trial.

**COUNT SEVEN**

**MINNESOTA ANTITRUST ACT SECTION 325D.51**
**UNREASONABLE RESTRAINT OF TRADE**
**(Minn. Stat. § 325D.51)**

73.     Plaintiff realleges and incorporates as though fully set forth herein the allegations contained in paragraphs 1 through 72 of this Complaint.

74.     Defendants NAMI's aforementioned wrongful conduct and agreements violate Section 325D.51 of the Minnesota Antitrust Act, Minn. Stat. § 325D.51, by unreasonably and unlawfully restraining trade in the State of Minnesota.

75.     Defendants NAMI's antitrust violations as alleged herein constitute a material cause of injury to the plaintiff.

76.     As a direct and proximate result of the Defendant NAMI's violations of Section 325D.51 of the Minnesota Antitrust Act, Minn. Stat. § 325D.51, plaintiff has been, and continues to be, injured in its business and property.   Plaintiff is therefore entitled to damages and injunctive relief as set forth below.

77.     Defendant NAMI's antitrust violations as alleged herein have substantially injured competition in the State of Minnesota.   These injuries, as alleged, are of the type addressed by the antitrust laws.

## COUNT EIGHT

### MINNESOTA ANTITRUST ACT SECTION 325D.53
### UNLAWFUL BOYCOTT
### (Minn. Stat. § 325D.53)

78.     Plaintiff realleges and incorporates as though fully set forth herein the allegations contained in paragraphs 1 through 77 of this Complaint.

79.     Defendant NAMI has a dominant position in the in-store advertising and promotion products and services market and access to retailers is necessary to compete in this market.

80.     Defendants NAMI's, Albertson's and other retailer's aforementioned wrongful conduct and agreements violate Section 325D.53 of the Minnesota Antitrust Act, Minn. Stat. § 325D.53, by unreasonably and unlawfully restraining trade in the State of Minnesota.

81.     Defendants NAMI's, Albertson's and other retailer's antitrust violation as alleged herein constitutes a material cause of injury to the plaintiff.

82.     As a direct and proximate result of the Defendants NAMI's, Albertson's and other retailer's violations of Section 325D.53 of the Minnesota Antitrust Act, Minn. Stat. § 325D.53, plaintiff has been, and continues to be, injured in its business and property. Plaintiff is therefore entitled to damages and injunctive relief as set forth below.

83.     Defendants NAMI's, Albertson's and other retailer's antitrust violations as alleged herein have substantially injured competition in the State of Minnesota. These injuries, as alleged, are of the type addressed by the antitrust laws.

20

## COUNT NINE

### MINNESOTA ANTITRUST ACT SECTION 325D.53
### UNLAWFUL EXCLUSIVE DEALING
### (Minn. Stat. § 325D.53)

84.     Plaintiff realleges and incorporates as though fully set forth herein the allegations contained in paragraphs 1 through 83 of this Complaint.

85.     Defendant NAMI's aforementioned wrongful conduct and agreements violate Section 325D.53 of the Minnesota Antitrust Act, Minn. Stat. § 325D.53, by unreasonably and unlawfully restraining trade in the State of Minnesota.

86.     Defendant NAMI's antitrust violation as alleged herein constitutes a material cause of injury to the plaintiff.

87.     As a direct and proximate result of the defendants' violations of Section 325D.53 of the Minnesota Antitrust Act, Minn. Stat. § 325D.53, plaintiff has been, and continues to be, injured in its business and property. Plaintiff is therefore entitled to damages and injunctive relief as set forth below.

88.     Defendant NAMI's antitrust violations as alleged herein have substantially injured competition in the State of Minnesota. These injuries, as alleged, are of the type addressed by the antitrust laws.

## COUNT TEN

### MINNESOTA ANTITRUST ACT SECTION 325D.52
### UNLAWFUL MONOPOLIZATION
### (Minn. Stat. § 325D.52)

89.     Plaintiff realleges and incorporates as though fully set forth herein the allegations contained in paragraphs 1 through 88 of this Complaint.

21

90.     Defendant NAMI has a dominant share of sales in the relevant markets and monopoly power in those markets.

91.     Defendant NAMI's monopoly position has been acquired and maintained through exclusionary, predatory, and other unjustified business conduct, as opposed to a superior product, business acumen, or historic accident.

92.     If not enjoined, Defendant NAMI's unlawful exclusionary and predatory conduct will continue, with the results, among others, that Insignia will be frozen out of the relevant markets, CPGs' customers for the relevant products will have reduced choices and pay higher prices; and consumers at supermarkets and drug stores will be deprived of material in-store information, and price and non-price competition that would otherwise benefit them.

93.     As a direct and proximate result of Defendant NAMI's monopolization of the relevant markets in violation of Section 325D.52 of the Minnesota Antitrust Act, Minn. Stat. § 325D.52, plaintiff has been, and continues to be, injured in its business and property.  Plaintiff is therefore entitled to damages and injunctive relief as set forth below.

94.     Defendant NAMI's antitrust violations as alleged herein have substantially injured competition in the relevant markets.  These injuries, as alleged, are of the type addressed by the antitrust laws.

**COUNT ELEVEN**

**MINNESOTA ANTITRUST ACT SECTION 325D.52
UNLAWFUL ATTEMPTED MONOPOLIZATION
(Minn. Stat. § 325D.52)**

95.     Plaintiff realleges and incorporates as though fully set forth herein the allegations contained in paragraphs 1 through 94 of this Complaint.

96.     Defendant NAMI's exclusionary and predatory conduct has been undertaken with the specific intent to create a monopoly in each of the relevant markets.

97.     If not enjoined, a dangerous probability exists that Defendant NAMI's unlawful exclusionary and predatory conduct will succeed in creating and maintaining a monopoly in the relevant markets, with the results, among others, that Insignia will be frozen out of the relevant markets, CPGs' customers for the relevant products will have reduced choices and pay higher prices; and consumers at supermarkets and drug stores will be deprived of material in-store information, and price and non-price competition that would otherwise benefit them.

98.     As a direct and proximate result of the NAMI's attempts to monopolize the relevant markets in violation of Section 325D.52 of the Minnesota Antitrust Act, Minn. Stat. § 325D.52, plaintiff has been, and continues to be, injured in its business and property. Plaintiff is therefore entitled to damages and injunctive relief as set forth below.

99.     Defendant NAMI's antitrust violations as alleged herein have substantially injured competition in the relevant market. These injuries, as alleged, are of the type addressed by the antitrust laws.

### COUNT TWELVE

### MINNESOTA DECEPTIVE TRADE PRACTICES ACT SECTION 325D.44 FALSE ADVERTISING (Minn. Stat. § 325D.44)

100.    Plaintiff realleges and incorporates as though fully set forth herein the allegations contained in paragraphs 1 through 99 of this Complaint.

101.    In violation of Section 325D.44 of the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44, Defendant NAMI has made repeated false and misleading descriptions of fact and false and misleading statements of fact regarding Insignia and the nature, qualities and

23

character of both its own SmartSource Price Pop Guaranteed program and Insignia's Price POPSign program.

102. Defendant NAMI's false and misleading statements have caused CPGs and retailers to be confused, misled and deceived about the nature, qualities and character of Insignia's in-store marketing vehicles. Defendant NAMI's false and misleading statements are material because they have influenced the decisions of: (a) CPGs to purchase Insignia's in-store advertising and promotion products and services; and (b) retailers to grant or honor the right to allow Insignia to sell its in-store advertising and promotion products and services for use in their respective retail stores.

103. As a result of Defendant NAMI's false and misleading statements, plaintiff Insignia has suffered economic injury, loss of goodwill, and other injuries in an amount to be determined at trial.

## REQUEST FOR RELIEF

**WHEREFORE, plaintiff INSIGNIA respectfully requests that:**

1. This Court award monetary damages sustained by Insignia from defendants News Corp. and NAMI as a result of injury due to defendants' violations of the Sherman Act (15 U.S.C. §§ 1 and 2) in amounts to be ascertained at trial, such amounts to be trebled pursuant to Section 4 of the Clayton Act, (15 U.S.C. § 15);

2. This Court award monetary damages sustained by Insignia from defendants News Corp. and NAMI due to their violations of Section 3 of the Clayton Act (15 U.S.C. § 14) in amounts to be ascertained at trial, such amounts to be trebled pursuant Section 4 of the Clayton Act (15 U.S.C. §§ 15);

3.     This Court award monetary damages sustained by Insignia as a result of defendants News Corp. and NAMI's violation of the Lanham Act; 15 U.S.C. § 1125(a), trebled or otherwise augmented as the Court may deem appropriate pursuant to 15 U.S.C. § 1117(a);

4.     This Court award monetary damages sustained by Insignia as a result of defendants News Corp. and NAMI's violations of Sections 325D.51, 325D.53, and 325D.52 of the Minnesota Antitrust Act in amounts to be ascertained at trial, and such amounts to be trebled pursuant to Section 325D.57 of the Minnesota Antitrust Act;

5.     This Court award monetary damages sustained by Insignia as a result of Defendant Albertson's violations of the Sherman Act (15 U.S.C. § 1) in amounts to be ascertained at trail, such amounts to be trebled pursuant to Section 4 of the Clayton Act, (15 U.S.C. § 15);

6.     This Court award monetary damages sustained by Insignia as a result of Albertson's violation of Section 325D.53 of the Minnesota Antitrust Act in amounts to be ascertained at trial, and such amounts to be trebled pursuant to Section 325D.57 of the Minnesota Antitrust Act;

7.     This Court enter a permanent injunction to the degree the Court may deem appropriate, prohibiting Defendants News Corp., NAMI and Albertson's from: (a) soliciting, entering into, or enforcing any exclusive contract, combination or arrangement with any retail store or chain, or any CPGs; (b) combining or conspiring with any retail store or chain or with any manufacturer to exclude or refuse to do business or otherwise interfere with the business and prospects of Insignia; (c) interfering with any contract or prospective business arrangement between Insignia and any third party; (d) engaging in any false, misleading or untrue

disparagement of Insignia or its products or services; and (e) such other or further acts or practices as the Court may see fit to enjoin;

8.     This Court award to Insignia recovery of the costs of this suit, including reasonable attorneys' fees; and

9.     This Court award such other and further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff Insignia respectfully requests a trial by jury on all issues so triable herein.

Respectfully Submitted,

Robert L. Meller, Jr. (71912)
Best & Flanagan LLP
225 South Six Street, Suite 4000
Minneapolis, Minnesota 55402-4690
(612) 339-7121 (Phone)
(612) 339-5897 (Facsimile)

Dated:  September 23, 2004

Willie L. Hudgins, VSB No. 01547
COLLIER SHANNON SCOTT, PLLC
3050 K Street, N.W., Suite 400
Washington, D.C. 20007-5108
(202) 342-8586 (Phone)
(202) 342-8451 (Facsimile)

Attorneys for Plaintiff
INSIGNIA SYSTEMS, INC.