UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

| | |
|---|---|
| INSIGNIA SYSTEMS, INC., | Civil No. 04-4213 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| NEWS CORPORATION, LTD., NEWS AMERICA MARKETING IN-STORE, INC., and ALBERTSON'S INC., | |
| Defendants. | |

---

Willie L. Hudgins, **COLLIER SHANNON SCOTT**, PLLC, 3050 K Street, NW, Suite 400, Washington, D.C. 20007, and Robert L. Meller, Jr. and Cynthia L. Hegarty, **BEST & FLANAGAN LLP**, 225 South Sixth Street, Suite 4000, Minneapolis, MN 55402, for plaintiff.

Stacey Anne Mahoney, **CONSTANTINE CANNON**, 450 Lexington Avenue, 17th Floor, New York, NY 10017, and Todd Wind, **FREDRIKSON & BYRON**, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, for defendants News Corporation, Ltd. and News America Marketing In-Store, Inc.

Michael A. Lindsay, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402, and Phillip A. Proger, **JONES DAY**, 51 Louisiana Avenue, NW, Washington, D.C. 20001, for defendant Albertson's Inc.

**BACKGROUND**

Plaintiff Insignia, Inc. ("Insignia") and defendant News America Marketing In-Store, Inc. ("NAMI") are direct competitors in the in-store advertising market. Each buys shelf space and other advertising space from retailers, like defendant Albertson's, and

sells advertising services, including in-store placement in retailers, to consumer packaged goods companies ("CPGs"), i.e. manufacturers of packaged products. Insignia contends that NAMI has engaged in activity that excludes Insignia and other competing in-store advertisers from access to retailers' advertising space by (1) signing exclusive agreements with retailers; (2) orchestrating a boycott of other in-store advertisers by retailers; (3) engaging in exclusionary and anticompetitive conduct designed to harm Insignia and consumers; and, (4) making false and disparaging representations about Insignia. Insignia alleges state and federal antitrust violations against NAMI and Albertson's and false advertising violations against NAMI. NAMI and Albertson's move to dismiss under Rule 12(b)(6) for failure to state a claim. For the following reasons, the Court grants the motions to dismiss.

## ANALYSIS

**I.   STANDARD OF REVIEW**

In a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff and presumes all facts alleged in the complaint to be true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Schmedding v. Tnemec Co. Inc.*, 187 F.3d 862, 864 (8th Cir. 1999). The Court may dismiss a claim only where the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Schmedding*, 187 F.3d at 864.

## II. CLAIMS 3, 4, 5, 7, 8, AND 9 - UNLAWFUL BOYCOTT AND EXCLUSIVE DEALING (Sherman Act § 1, Clayton Act § 3, Minn. Stat. §§ 325d.51 and .53)

To establish a claim under section 1 of the Sherman Act, section 3 of the Clayton Act, or Minnesota Statute sections 325D.51 and 325D.53, a plaintiff must demonstrate (1) that there was a contract, combination, or conspiracy; and (2) that the agreement unreasonably restrained trade under either a *per se* rule of illegality or a rule of reason analysis. *Minn. Ass'n of Nurse Anesthetists v. Unity Hospital*, 5 F. Supp. 2d 694, 704 (D. Minn. 1998) (section 1 of the Sherman Act); *see 3M v. Appleton Papers Inc.*, 35 F. Supp. 2d 1138, 1142-43 (D. Minn. 1999) (analyzing claims under section 3 of the Clayton Act and section 1 of the Sherman Act together); *Howard v. Minn. Timberwolves Basketball Ltd.*, 636 N.W.2d 551, 557 (Minn. Ct. App. 2001) (stating that Section 1 of the Sherman Act is analogous to Minnesota Statutes sections 325D.51 and 325D.53).

### A. Contract, Combination, Or Conspiracy

"In order to withstand a motion to dismiss, a plaintiff must go further than merely alleging a conspiracy existed, for a bare bones accusation of conspiracy without any supporting facts is insufficient to state an antitrust claim." *N.W. Title & Escrow Corp. v. Edina Realty, Inc.*, 1993 WL 593995, *1 (D. Minn. Dec. 11, 1993) (internal quotation omitted); *see also Five Smiths, Inc. v. Nat'l Football League Players Ass'n*, 788 F. Supp. 1042, 1048 (D. Minn. 1992) ("general allegations of conspiracy, without a statement of the facts constituting the conspiracy, its objects and accomplishment are inadequate to state a cause of action"). A plaintiff must demonstrate that the defendants "had a

conscious commitment to a common scheme designed to achieve an unlawful objective." *Minn. Nurse Anesthetists*, 5 F. Supp. 2d at 704 (*quoting Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984)). "[C]oncerted action forms the essence of a section 1 claim; unilateral actions do not give rise to antitrust liability under section 1." *Id.* (*citing Willman v. Heartland Hosp. E.*, 34 F.3d 605, 610 (8th Cir. 1994). Furthermore, "conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Insignia has asserted that Albertson's and, possibly, other unnamed retailers have entered into long-term exclusive relationships with NAMI in exchange for unusually high up-front and guaranteed payments. According to Insignia, these induced relationships were intended to eliminate Insignia from the market. On their face, Insignia's allegations indicate only that NAMI unilaterally initiated a series of relationships that had the effect of preventing Insignia from doing business with some mostly unspecified retailers for an uncertain period of time, and that Albertson's and unspecified other retailers each agreed to exclusive relationships with NAMI at favorable terms. Offering a better deal than does the competition is a time-tested competitive strategy, and accepting a good deal when offered is generally considered to be a sound business practice. Insignia's allegations, therefore, provide insufficient indication of a common scheme designed to achieve an unlawful objective.

B.     **Unreasonable Restraint Of Trade**

Most agreements are evaluated under the "rule of reason," a standard that asks whether the alleged contract or agreement unreasonably restrains trade in a relevant product or geographic market. Certain kinds of agreements, however, are considered unlawful *per se* because they are of a type that is so often harmful and so rarely justified that proof of anticompetitiveness is not required. *Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 208 F.3d 655, 659 (8th Cir. 2000) (*quoting NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 133 (1998)); *see also Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1058 (8th Cir. 2000).

1.     **Per se violation**

A "group boycott" is a narrow category of *per se* violation, "limited to cases in which firms with market power boycott suppliers or customers in order to discourage them from doing business with a competitor." *Minn. Nurse Anesthetists*, 208 F.3d at 659 (*quoting FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 458 (1986)). "It is not an antitrust 'boycott' when one supplier enters into an exclusive supply agreement with one customer, even though the supplier's competitors are 'foreclosed' from that customer for the life of the contract." *Id.* A horizontal restraint of trade is another category of *per se* violation. *See Double D Spotting Service, Inc. v. Supervalu, Inc.*, 136 F.3d 554, 558 (8th Cir. 1998). Horizontal restraints of trade result when combinations of traders at one level of the market structure agree to exclude direct competitors from the same level of the market. *Id.*

According to Insignia, Albertson's and other retailers, at the instigation of NAMI, agreed to deal only with NAMI and to exclude Insignia from the in-store advertising market resulting in a group boycott of Insignia and a horizontal restraint of trade.  As noted above, Insignia's evidence and allegations indicate only that NAMI arranged one exclusive agreement with Albertson's, and may have arranged other similar relationships.  This is insufficient to support an allegation of a group boycott.  Additionally, as NAMI and Albertson's are not participants in the market at the same level, any agreement between the two cannot constitute a horizontal restraint of trade.  Although an agreement between retailers could constitute a horizontal restraint of trade, Insignia has not provided any indication that Albertson's has ever spoken to, let alone entered into an agreement with, another retailer regarding or resulting in the exclusion of Insignia from the market.  The Court, therefore, finds that Insignia has not adequately alleged a *per se* violation of the antitrust laws, and Insignia's claims must therefore be analyzed under the Rule of Reason.

    2.    **Rule Of Reason**

Exclusive dealing contracts are usually analyzed under the Rule of Reason.  *Minn. Nurse Anesthetists*, 208 F.3d at 660 (*citing Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 333-335 (1961)).  In order to prevail, a plaintiff must produce evidence to show that the defendant's contractual arrangements were unreasonable, based on the extent to which competition has been foreclosed in a substantial share of the relevant market, the duration of any exclusive arrangement, and the height of entry barriers.  *Concord Boat*,

207 F.3d at 1059-60. "Where the degree of foreclosure caused by the exclusivity provisions is so great that it invariably indicates that the supplier imposing the provisions has substantial market power, we may rely on the foreclosure rate alone to establish the violation. However, where . . . the foreclosure rate is neither substantial nor even apparent, the plaintiff must demonstrate that other factors in the market exacerbate the detrimental effect of the challenged restraints." *Ryko Mfg. Co. v. Eden Servs.*, 823 F.2d 1215, 1235 (8th Cir. 1987). Alternatively, a plaintiff may demonstrate that the challenged practice has actually produced significant anti-competitive effects, in which case formal market analysis is unnecessary. *Minn. Nurse Anesthetists*, 5 F. Supp. 2d at 707 (*citing Ind. Dentists*, 476 U.S. at 460-61)).

      **a.**     **Market power/foreclosure**

A plaintiff must demonstrate that the defendant has a dominant market share in a well-defined relevant market. *Flegel v. Christian Hosp.*, 4 F.3d 682, 689 (8th Cir. 1993). Assuming that there are, as Insignia asserts, local, regional, and national markets for in-store advertising services, Insignia's complaint provides insufficient indication of NAMI's market share or ability to foreclose competitors' participation in the relevant markets. Insignia asserts that NAMI dominates the relevant markets, that Insignia and Floorgraphics, Inc. pose the only significant competition to NAMI, and that NAMI has foreclosed Insignia from doing business with retailers in local, regional, and national markets by entering into exclusive contracts with 35,000 retail stores including the 2,500 Albertson's outlets throughout the nation. Based on this information, NAMI could,

conceivably, dominate (in the colloquial sense) any given market with a 50% share as compared to Insignia's and Floorgraphics' hypothetical 25% shares, but fail to be dominant in the legal sense.  *See Tops Markets, Inc. v. Quality Markets, Inc*., 142 F.3d 90, 97 (2d Cir. 1998) (finding 72% market share insufficient to support a section 1 claim); *Minn. Nurse Anesthetists*, 5 F. Supp. 2d at 708 (stating that a market share of 30% is insufficient as a matter of law to constitute sufficient market power to achieve significant foreclosure).  Furthermore, absent some indication of the percentage of the local, regional, or national markets that the 35,000 retail outlets allegedly under exclusive contract constitute, it is impossible to evaluate the percentage of the market with which Insignia and other competitors are prevented from doing business, let alone determine that Insignia and other competitors are prevented from dealing with a significant number of retailers.  *See Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 45-46 (1984) (O'Connor, J., concurring) (quoted in *Minn. Nurse Anesthetists*, 208 F.3d 661) ("Exclusive dealing is an unreasonable restraint on trade only when a significant fraction of buyers and sellers are frozen out of a market by the exclusive deal").  These same deficiencies prevent the Court from determining whether significant barriers to entering this market or other factors exacerbating the detrimental effect of the challenged restraints exist.  Insignia provides no indication of any barriers other than NAMI's exclusive contracts with the 35,000 retail outlets.  Because it is unclear how large the markets are, or what the terms of the NAMI's alleged contracts are, it is impossible to determine how high a barrier is created by NAMI's exclusive contracts.

### b. Actual detrimental effects

Actual detrimental effects may include an actual increase in the price of the good or service, a decrease in output, or a decline in quality. *Minn. Nurse Anesthetists*, 5 F. Supp. 2d at 707. Insignia broadly alleges that in-store information and advertising has been reduced and that higher prices have resulted. The Court finds that, as when demonstrating the existence of a contract, combination or conspiracy, such broad, unsupported allegations are inadequate to withstand a motion to dismiss.

Insignia's allegations indicate that NAMI is large and successful – but do not indicate that NAMI wields any particular degree of market power or ability to foreclose competitors from the market, or has entered into any sort of agreement in an attempt to do so. "Size in itself does not create an unlawful monopoly within the meaning of the Sherman Anti-Trust Act." *Kansas City Star Co. v. United States*, 240 F.2d 643, 658 (8th Cir. 1957). As Insignia's complaint insufficiently alleges either a contract, combination, or conspiracy or an unreasonable restraint of trade, the Court will grant NAMI's and Albertson's motions to dismiss with respect to claims 3, 4, 5, 7, 8, and 9.

### III. CLAIMS 1 AND 10 – UNLAWFUL MONOPOLIZATION (Sherman Act § 2 and Minn. Stat. § 325d.52)

In order to make out a claim under either section 2 of the Sherman Act or its Minnesota corollary, Minnesota Statute section 325D.52, a plaintiff is required to plead and, ultimately, prove that the defendant "(1) possessed monopoly power in the relevant market and (2) willfully acquired or maintained that power as opposed to gaining it as a result 'of a superior product, business acumen, or historical accident.'" *Double D*, 136

F.3d at 560; *Howard*, 636 N.W.2d at 556 (stating that Minnesota antitrust law should be interpreted consistently with federal court interpretations of federal antitrust law unless Minnesota law clearly conflicts.); *Prestressed Concrete, Inc. v. Bladholm Bros. Culvert Co.*, 498 N.W.2d 274, 276 (Minn. Ct. App. 1993) (noting that section 2 of the Sherman Act provided the model for Minn. Stat. § 325D.52).

Monopoly power under § 2 of the Sherman Act requires something greater than market power under § 1. *See Fortner Enterprises v. U.S. Steel*, 394 U.S. 495 (1969). Thus, assuming *arguendo* that Insignia has adequately defined the relevant market and has alleged anticompetitive conduct sufficient to withstand a motion to dismiss, based on the Court's analysis in section II(B)(2)(a), *supra*, Insignia has not adequately established NAMI's monopoly power. Accordingly, the Court will grant NAMI's motion to dismiss claims 1 and 10.

## IV. CLAIMS 2 AND 11– ATTEMPTED MONOPOLIZATION (Sherman Act § 2 and Minn. Stat. § 325d.52)

To prevail on an unlawful attempt claim, Insignia must prove "(1) a specific intent by the defendant to control prices or destroy competition; (2) predatory or anticompetitive conduct undertaken by the defendant directed to accomplishing the unlawful purpose; and (3) a dangerous probability of success." *General Indus. Corp. v. Hartz Mountain Corp.*, 810 F.2d 795, 803 (8th Cir. 1987).

"To determine whether there is a dangerous probability of monopolization, courts have found it necessary to consider the relevant market and the defendant's ability to lessen or destroy competition in that market." *Spectrum Sports, Inc. v. McQuillan*, 506

U.S. 447, 456 (1993).  "Proof of market power in a monopolization claim and proof of dangerous probability of success in an attempt claim are of the same character."  *3M v. Appleton Papers*, 35 F. Supp. 2d at 1146.  Thus, under the Court's analysis in section II(B)(2)(a), *supra*, Insignia has not adequately established NAMI's dangerous probability of success and the motion to dismiss these claims will be granted.

V.     **CLAIMS 6 AND 12 – FALSE ADVERTISING (Lanham Act and Minnesota Deceptive Trade Practices Act)**

In order to establish its false advertising claims, Insignia must establish (1) a false statement of fact made in a commercial advertisement, (2) which actually deceived or had a tendency to deceive a substantial segment of the intended audience, (3) which was material in that it was likely to influence purchasing decisions, (4) which has or is likely to injure Insignia, in the form of lost sales or lost goodwill.  *3M Innovative Props. Co. v. Dupont Dow Elastomers LLC*, 361 F. Supp. 2d 958, 968 (D. Minn. 2005).

Insignia alleges that "NAMI has made repeated false and misleading … statements of fact regarding Insignia and the nature, qualities and character of [NAMI's] Price Pop Guaranteed program and Insignia's Price POPSign program," including its quality and efficacy, causing "CPGs and retailers to be confused, misled, and deceived about the nature, qualities and character of Insignia's in-store marketing vehicles" and influencing the decisions of "(a) CPGs to purchase Insignia's in-store advertising and promotion products and services; and (b) retailers to grant or honor the right to allow Insignia to sell its in-store advertising and promotion products and services for use in their respective retail stores."  (Compl. ¶¶101 and 102.)  As a result, "Insignia has

suffered economic injury, loss of good will, and other injuries in an amount to be determined at trial." (Compl. ¶103.)

The Court finds that Insignia fails to adequately allege a false statement of fact made in a commercial advertisement. Insignia's complaint does nothing to indicate what allegedly false statements were made to which party in what context. The allegations seem to indicate that NAMI made objectionable statements to CPGs and retailers in connection with sales of its own product, but not that NAMI engaged in something akin to a widespread advertising campaign to discredit Insignia's product and, thereby, boost its own product's success. Such an allegation is insufficient to satisfy the first prong. *See Med. Graphics Corp. v. SensorMedics Corp.*, 872 F. Supp. 643, 650 (D. Minn. 1994) (infrequent statements by a sales representative to potential customers, as opposed to a traditional advertising campaign, are unlikely to constitute commercial advertising). Accordingly, the Court will grant NAMI's motion to dismiss counts 6 and 12.

## VI. CONCLUSION

The Court is mindful that a party is required only to make a short and plain statement of its claims, and that this bar is not high. Nevertheless, the Court finds that Insignia's complaint, as it stands, simply provides insufficient information with which to determine whether any set of facts exists under which Insignia might be able to support its claims. As such, it is appropriate to grant defendants' motions to dismiss. However, the Court will permit Insignia to amend its complaint within 30 days from the date of this Order.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant News America Marketing In-Store, Inc.'s motion to dismiss [Docket No. 28] is **GRANTED**.

2. Defendant Albertson's Inc.'s motion to dismiss [Docket No. 30] is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff shall have 30 days from the date of this Order to file an amended complaint.

DATED: August 25, 2005                          s/John R. Tunheim
at Minneapolis, Minnesota.                    JOHN R. TUNHEIM
                                                                               United States District Judge