# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| INSIGNIA SYSTEMS, INC., | Civil No. 04-4213 (JRT/AJB) |

                              Plaintiff,

STATE OF MINNESOTA, by its
Attorney General, Lori Swanson,

                    Plaintiff-Intervenor,

v.

NEWS AMERICA MARKETING IN-
STORE, INC., and ALBERTSON'S
INC.,

                              Defendants,
_____

NEWS AMERICA MARKETING IN
STORE, INC.,

                    Counterclaim Plaintiff,

v.

INSIGNIA SYSTEMS, INC., and
SCOTT DRILL,

                    Counterclaim Defendants.

**ORDER DENYING
COUNTERCLAIM DEFENDANTS'
MOTIONS TO DISMISS**

Basil C. Culyba, **KELLEY DRYE AND WARREN**, 3050 K Street NW, Suite 400, Washington, DC 20007-5108; AND Jason C. Tarasek, **BEST & FLANAGAN**, 225 South Sixth Street, Suite 4000, Minneapolis, MN 55402, for Insignia Systems and Scott Drill.

Jennifer L. Dekarske and Alan I. Gilbert, **OFFICE OF THE MINNESOTA ATTORNEY GENERAL**, 445 Minnesota Street, Suite 1200, St. Paul, Minnesota 55101-2130. for intervenor State of Minnesota.

Stacey Anne Mahoney, **CONSTANTINE CANNON**, 450 Lexington Avenue, 17th Floor, New York, NY 10017; and Todd A. Wind, **FREDRIKSON & BYRON**, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, for News America Marketing In-Store, Inc.

Michael A. Lindsay and Kevin S. Ueland, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402-1498, for Albertson's Inc.

Plaintiff Insignia Systems, Inc. and defendant News America Marketing In-Store, Inc. ("NAMI") are direct competitors in the in-store advertising market. Each buys shelf space and other advertising space from retailers, like defendant Albertson's Inc. ("Albertsons"), and sells advertising services to manufacturers of packaged products.

In its complaint, Insignia alleges that NAMI has entered into exclusive contracts with retailers and that such conduct violates state and federal antitrust laws. NAMI filed counterclaims alleging that Insignia wrongfully enticed retailers to breach their contracts with NAMI. NAMI also alleges that Insignia's president, Scott Drill, made untrue disparaging comments about NAMI in violation of state and federal law. Insignia and Drill filed this motion to dismiss the counterclaims. For the reasons discussed below, the Court denies the motion.

## BACKGROUND

NAMI and Insignia are in the business of selling advertising services. They purchase advertising space from retailers and then sell the space, along with their

advertisement services, to packaged good companies.  Although the types of advertising services vary, both NAMI and Insignia make signage for shelves and carts as well as mechanisms for distributing coupons.  NAMI enjoys a majority market share, in part because it has entered into exclusive contracts with many retailers.  Those contracts prohibit retailers from allowing other companies to purchase advertising space in the store, thereby permitting NAMI to guarantee to packaged good manufacturers that competing products will not be advertised at the same time as their products.

NAMI filed suit against Insignia related to those contracts in 2003.  In that complaint, filed in the Southern District of New York, NAMI charged Insignia with knowingly and willfully interfering with NAMI's exclusive contracts with retailers. NAMI alleged that Insignia told retailers they could display Insignia products at the same time as NAMI products and that Insignia placed its advertising products in stores that had contracted with NAMI.  NAMI further asserted that Insignia used wrongfully obtained confidential information and misleading press releases to coerce retailers into breaching their contracts.  NAMI contended that this conduct violated state laws prohibiting deceptive trade practices and that Insignia should also be held liable for tortious interference with existing business relationships, tortious interference with prospective economic advantage, and unfair competition.

While that case was pending, Insignia filed this action in the District of Minnesota. Insignia alleges in its complaint that NAMI's conduct, specifically its use of contracts containing exclusivity provisions, violated state and federal antitrust laws.  It also claims that NAMI committed false advertising by making false statements to retailers and

- 3 -

packaged good companies about the quality of Insignia's services.  In December 2006 the State of Minnesota successfully intervened and filed an additional complaint against NAMI for engaging in deceptive trade practices.

NAMI filed an amended answer with counterclaims in January 2007.  Along with reasserting the claims originally filed in the Southern District of New York, NAMI filed additional counterclaims against Insignia as well as against its president, Scott Drill, for (1) false advertising under the Lanham Act, (2) false advertising and business disparagement in accordance with the Minnesota Deceptive Trade Practices Act ("MDTPA"), (3) libel per se, and (4) slander per se.  These charges arose from allegations that Drill made false and misleading statements regarding NAMI's business practices, including statements to retailers, packaged good companies, and the general public that NAMI engaged in illegal, anticompetitive conduct.  The complaint points directly to Drill's statements in a quarterly results conference call that NAMI engages in illegal conduct and in a February 2006 letter to packaged good companies that NAMI "is on a mission to destroy competition," "appears to be getting even more aggressive in its sales tactics," and "continues to try to destroy in-store competition."  Drill also is alleged to have stated in the letter that his comments then were the same as those he had expressed in a previous letter to the packaged good companies in June 2004.

On February 22, 2007, the case originally filed in the Southern District of New York against Insignia was transferred to this district.  The parties agreed that New York law governed the four counterclaims that mirrored the claims NAMI had originally

brought in New York and that the Court would consider those counterclaims to have been filed on the date NAMI filed its complaint in New York.

Drill and Insignia filed this motion to dismiss all eight of the counterclaims. Drill argues that the charges against him should be dismissed because the statements are nonactionable statements of opinion, because the statements are privileged, and because some of the claims are barred by the statute of limitations. Insignia asserts that all the counterclaims should be dismissed because NAMI fails to set forth facts alleging all the elements for the charges. It also claims that statements Drill made to retailers and product manufacturers about both Insignia's and NAMI's products are protected by doctrines related to the First Amendment and that several of the counterclaims should also be dismissed for failure to name indispensable parties.[1]

## ANALYSIS

## I.      STANDARD FOR REVIEWING A MOTION TO DISMISS

A motion to dismiss a counterclaim is treated in the same manner as a motion to dismiss filed by a defendant. *Countrywide Services Corp. v. SIA Ins. Co., Ltd.*, 235 F.3d

---

[1] The Court held a hearing on the motion to dismiss on June 5, 2007. On June 26, 2007, Insignia filed a motion to supplement the record with additional documents that it claimed were encompassed by the counterclaims, namely, a 2004 letter and an attachment to the February 2006 letter. NAMI resisted the motion, arguing that it did not possess those documents when it filed its counterclaims. Insignia then filed a reply memorandum. Three days later, on July 12, 2007, Insignia filed a motion seeking leave to file the reply memorandum it had already filed.

In its motion seeking to supplement the record, Insignia does not explain how consideration of those documents would aid the Court in analyzing the motions to dismiss; and the Court finds that consideration of those documents is immaterial to its analysis of the motions, especially considering NAMI's assertion that it had not seen them when it filed the counterclaims. As a result, the Court denies the motion to supplement the record as well as the motion to file a reply memorandum in support of the motion.

390, 391 (8th Cir. 2000).   A court reviewing the motion takes all "well pleaded factual allegations as true" and draws "all reasonable inferences in favor" of the claimant. *Katun Corp. v. Clarke*, 484 F.3d 972, 975 (8th Cir. 2007).   A motion to dismiss should be granted "only if it appears beyond doubt" that the claimant can prove "no set of facts to warrant a grant of relief." *Id.* (internal quotation and citation omitted).

## II.      COUNTERCLAIMS ASSERTED AGAINST DRILL AND INSIGNIA

NAMI filed four counterclaims against Drill and Insignia related to comments Drill made to third parties about NAMI's business practices: (1) a Lanham Act claim, (2) an MDPTA claim, (3) libel per se, and (4) slander per se.    Drill and Insignia argue these claims should be dismissed because the statements alleged were only statements of opinion for which a party cannot be held liable and because the statements were made in the context of litigation and were therefore privileged.   They also contend that NAMI fails to set forth all the elements for claims asserted  and that all the statements are protected by the *Noerr-Pennington* doctrine.   Finally, Drill and Insignia seek dismissal on at least one of the common law claims because it is barred by the statute of limitations. NAMI refutes all of the defenses, arguing that it has submitted sufficient allegations to withstand the motions to dismiss.

### A.      Statements of Fact or Opinion

The Court turns first to the general defenses, specifically the argument that the counterclaims should be dismissed because the statements alleged are nonactionable statements of opinion.    Insignia and Drill contend that the counterclaims fail as a matter

of law because the statements were not independently verifiable when they were made. NAMI does not dispute the proposition that it is barred from proceeding if the statements alleged are not statements of fact but argues it is premature at this stage in the litigation to determine the nature of the statements.

A party seeking to proceed on a claim under the Lanham Act or the MDTPA must set forth sufficient facts demonstrating a false statement of fact. *See Rainbow Play Sys., Inc. v. Groundscape Tech., LLC*, 364 F. Supp. 2d 1026, 1033-39 (D. Minn. 2005). Similarly, a claimant cannot prevail on a claim for slander or libel in Minnesota without demonstrating a false statement of fact. *See generally Jadwin v. Minneapolis Star and Tribune Co.*, 390 N.W.2d 437, 440 (Minn. 1986). As a result, these counterclaims must be dismissed if the statements alleged in the complaint are only statements of opinion[2] and not statements of fact or statements that "imply a false assertion of fact." *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990).

Courts are to look at four factors to distinguish statements of fact from those of opinion: (a) a statement's precision and specificity, (b) a statement's verifiability, (c) the social and literary context in which the statement was made, and (d) the statement's public context. *Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1302-03 (8th Cir. 1986). The

---

[2]   Implied within the arguments presented by Drill and Insignia is that there is a constitutional right to express opinions and that any liability arising from exercise of this right is therefore barred by the Constitution. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974) (noting that "[u]nder the First Amendment there is no such thing as a false idea"). The Court need not address that proposition here, however, because NAMI is unable to proceed on the statutes and torts giving rise to its causes of action unless it can demonstrate that the statements were false statements of fact. If NAMI can make that showing, the Constitution offers no protection to the statements. *See Herbert v. Lando*, 441 U.S. 153, 171 (1979) (holding that false information "carries no First Amendment credentials"); *Gertz*, 418 U.S. at 340 (finding "no constitutional value in false statements of fact").

Eighth Circuit has highlighted the importance of the second factor, holding that a statement is not actionable unless it is "provably false." *Fjelsta v. Zogg Dermatology, PLC*, 488 F.3d 804, 811 (8th Cir. 2007).

Courts attempting to distinguish statements of fact from those of opinion when faced with statements about the legality of another party's conduct have not reached plainly consistent results based on the words of the statements themselves. Some courts have determined that statements implying the illegality of conduct are factual assertions, while others have held that similar statements are nonactionable statements of opinion. *Compare Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 434 F. Supp. 2d 598, 624 (N.D. Iowa 2006) (holding statement made to third party that competitor was violating patent laws to be statement of fact), *with Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) (holding CEO's statement that competitor was "not licensed" to be statement of opinion).

The inquiry in these cases, then, involves a consideration of not only the words themselves but also the context in which the statements were made. This includes an examination of whether the legality of the conduct has already been decided or is otherwise known to the speaker at the time of the statements. *See, e.g.*, *Dial A Car, Inc. v. Transportation, Inc.*, 82 F.3d 484, 489 (D.C. Cir. 1996) (noting the "proper inquiry is whether the law was ambiguous" at the time of the statements). If a speaker is aware that statements are either untrue or unsupported conclusions not based on the prevailing law, then the statements are provably false and therefore actionable. If, on the other hand, the speaker is only opining on unsettled areas of the law, the statement is one of opinion.

Applying these factors to this case, the Court must determine whether NAMI has set forth sufficient allegations that, if true, would demonstrate that the statements were "provably false," *Fjesta*, 488 F.3d at 811, given the "context" in which they were made. *Janklow*, 788 F.2d at 1302-03 (8th Cir. 1986). The complaint characterizes Drill's comments that NAMI engaged in illegal, anticompetitive conduct and entered into unenforceable contracts as "willful" misrepresentations of the law "made with the purpose and effect" of causing an injury. NAMI also claims Drill "knew that the statements were false" or at a minimum demonstrated "a reckless disregard for the truth" or "gross irresponsibility" when he made the statements. Given these allegations that Drill both knew the statements were false and that they were unsupported by the law, and considering the standard the Court must apply in assessing a motion to dismiss, the Court denies the motions seeking to dismiss these claims as based on nonactionable statements of opinion.

**B.      Absolute and Qualified Privilege; *Noerr Pennington* Doctrine**

Even if the statements are considered statements of fact, Drill and Insignia contend that the counterclaims should be dismissed based on absolute privilege, qualified privilege, and the *Noerr Pennington* doctrine. NAMI counters that these defenses are inapplicable to the facts of this case.

Statements are protected by absolute privilege and are therefore nonactionable[3] if the statement was (1) made "preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of a judicial proceeding" and (2) the statement "has some relation" to the proceeding. *Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 697 (8th Cir. 1979) (internal citation and quotation omitted). The privilege exists to encourage "witnesses to participate in judicial proceedings so that the search for truth may be fruitful." *Mahoney & Hagberg v. Newgard*, 729 N.W.2d 302, 309 (Minn. 2007); *see also* Restatement (Second) of Torts § 587(b) (noting that the privilege applies to communications made to an attorney or other "proper officer").

The statements at issue in this case were not made to a judicial officer or another party in the lawsuit. They were instead made to customers of both entities and to members of the general public. Insignia and Drill contend that the Court should extend the privilege to include these conversations because customers and shareholders had an interest in the outcome of the litigation, but the counterclaim defendants have cited no persuasive authority for extending the privilege to this extent. Given that the statements were made to third parties who are not named in the lawsuit and who had only indirect interests in the outcome of the litigation, Drill and Insignia are not entitled to dismissal of the counterclaims on this basis.

---

[3] The parties agree that absolute privilege would protect Drill and Insignia from suit for libel or slander but disagree as to whether the privilege would extend to protect them from liability under the Lanham Act and the MDTPA. The Court need not decide that issue because of its conclusion that the privilege does not apply to the facts of this case. The Court notes, however, that in the Restatement (Second) of Torts the privilege is viewed as applying equally to the "law of commercial disparagement" as well as to common law defamation claims. Restatement (Second) Torts § 635, cmt. A (1977).

Drill and Insignia also assert that they are entitled to qualified privilege on the claims for libel and slander.  Courts apply qualified privilege to protect parties from liability for statements "made upon a proper occasion, from a proper motive . . . and based upon reasonable or probable cause." *Steumpges v. Parke, Davis & Co.*, 297 N.W.2d 252, 256-57 (Minn. 1980).  Given the allegations in the complaint that Drill made the statements knowing them to be false and with the purpose of unfairly harming NAMI, the motion to dismiss on this basis is also denied.

Finally, Drill and Insignia also seek protection under the *Noerr Pennington* doctrine because all the statements alleged are related to legal proceedings.  The *Noerr Pennington* doctrine arose to protect activities incidental to petitioning the government or seeking redress through legislation. *See Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 509-13 (1972); *see generally United Mine Workers v. Pennington*, 381 U.S. 657(1965); *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961).  The Eighth Circuit has yet to determine the breadth of the doctrine, *see Energy Ark., Inc. v. Neb.*, 358 F.3d 528, 553 n.19 (8th Cir. 2004), but Drill and Insignia have failed to provide any basis for the Court to extend the doctrine to apply to comments made about litigation to parties not named in the lawsuit.  As a result, the Court denies the motion to dismiss based on the *Noerr Pennington* doctrine.

C.      **Elements of Each Counterclaim**

Given the Court's finding that none of the general defenses to the counterclaims supports dismissal, the Court turns to the arguments that NAMI has failed to set forth the elements of each counterclaim alleged.

1.      **Lanham Act and MDTPA**

NAMI maintains that Drill and Insignia can be held liable for violating the Lanham Act and the MDTPA because Drill made misleading statements of fact to packaged good companies about the enforceability of its contracts and told those companies, as well as the general public, that NAMI was engaging in illegal, anticompetitive conduct. Drill and Insignia contend they are entitled to dismissal of these claims, arguing that the alleged statements did not relate to NAMI's products or services, that NAMI failed to set forth facts giving rise to a claim for damages, and that NAMI failed to name indispensable parties.

The Lanham Act, 15 U.S.C. § 1125, and the MDTPA, Minn. Stat. § 325D.44, prohibit the use of deceptive trade practices and unfair advertising. The parties agree that the same analysis applies to claims brought under either statute. *See, e.g.*, *Rainbow Play Sys., Inc. v. Groundscape Techs., LLC*, 364 F. Supp. 2d 1026, 1032 (D. Minn. 2005). A party wishing to proceed on a claim under either act must show (1) the other party made false statements of fact about the complainant's products or services, (2) the statements actually deceived or tended to deceive a large segment of the relevant audience, (3) the deception was likely to influence buying decisions, and (4) the complainant has been or is

likely to be injured as a result.  *See LensCrafters, Inc. v. Vision World, Inc.*, 943 F. Supp. 1481, 1488 (D. Minn. 1996).

Insignia and Drill first argue that these counterclaims should be dismissed because the statements alleged do not relate to NAMI's products or services.  The Lanham Act, however, permits claims based not only on statements about products and services but also statements about "commercial activities." *See Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1272-73 (10th Cir. 2000).  The alleged statements in this case, that NAMI's contracts were unenforceable and that NAMI did not meet its guaranteed level of service, relate to NAMI's commercial activities.  *See id.* (permitting complaint to proceed where defendant called the plaintiff an Agent of Satan).  Moreover, the Court concludes that NAMI would be able to proceed in any event because such statements also relate directly to the quality and value of the services NAMI provides.

In its second argument Insignia and Drill contend that the claims should be dismissed because NAMI has failed to allege actual damages.  This arguments also lacks merit.  NAMI stated in its complaint that Insignia's conduct caused packaged good companies, retailers, and the general public to be confused about NAMI's services and resulted in a loss of goodwill and business opportunities.  The Court therefore finds that NAMI has claimed sufficient damages to proceed.

Finally, Insignia and Drill seek dismissal of these claims pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to name indispensable parties.  They argue that the retailers alleged to have breached their contracts are "indispensable" under Rule of Civil Procedure 19 and that this counterclaim should be dismissed because NAMI did not

name them as defendants.  A court reviewing a Rule 12(b)(7) motion to dismiss must determine initially whether the presence of a nonparty is necessary either to afford complete relief among the parties or to avoid the possibility of unjust consequences resulting from that entity's absence.  Fed. R. Civ. P. 19(a).  If that entity's presence is necessary, the nonparty should be joined where "feasible."  *See Gwartz v. Jefferson Mem. Hosp.*, 23 F.3d 1426, 1428 (8th Cir. 1994).  If the nonparty is necessary but joinder is not feasible, the Court must determine whether in "equity and good conscience" the claims should be dismissed based on failure to name an "indispensable" party. Fed. R. Civ. P. 19(b); s*ee also Dou Yee Enter. (S) PTE, Ltd. V. Advnatek*, 149 F.R.D. 185, 188 (D. Minn. 1993).  In making this determination, courts are to consider: (1) whether a judgment entered in that party's absence will be prejudicial to the missing party, (2) whether any such prejudice can be lessened by reshaping the judgment, (3) whether the judgment will be adequate, and (4) whether the plaintiff will have an adequate remedy if the action is dismissed. *Id*.

According to Insignia and Drill, NAMI's failure to name the retailers as defendants warrants dismissal of these claims because NAMI cannot prevail without demonstrating the retailers breached their contracts.  The nonparty retailers are not "indispensable" to this litigation under Rule 19, however, because NAMI can obtain all the relief it seeks from Insignia and there has been no showing that the retailers will be unfairly prejudiced by this litigation.[4]  *See ConnTech Dev. Co. v. Univ. of Conn. Educ.*

---

[4]  The Court notes in addition that no retailer has sought to become a party to the litigation and the one retailer that has been named unsuccessfully sought to be dismissed.

*Prop., Inc.*, 102 F.3d 677, 683 (1st Cir. 1998).   At this early stage of the litigation, Insignia cannot avoid the consequences of its conduct solely on the basis that NAMI did not seek relief from other parties that may or may not be liable on other causes of action. The motions to dismiss the claims brought under the Lanham Act and the MDTPA are denied.

### 2.      Slander per se and Libel per se

NAMI also asserts claims for slander and libel based on Drill's statements in Insignia's October 2005 quarterly conference call and in the letters Drill wrote to packaged good companies in February 2006.   In all of those communications NAMI asserts that Drill made misrepresentations that NAMI engaged in illegal, anticompetitive business conduct.   Those statements, NAMI contends, resulted in damages to its business operations.   Drill and Insignia argue that any claims arising from the letter Drill wrote in February 2006 are barred by the statute of limitations.

Under Minnesota law the tort of defamation encompasses both slander and libel. To proceed on either claim a complainant must allege that the other party made "(a) a false and defamatory statement about the plaintiff, (b) in an unprivileged publication to a third party (c) that harmed the complainant's reputation in the community." *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1011 (8th Cir. 2005) (applying Minnesota law).   The statute

of limitations for asserting such a claim expires two years after the statement was made. *See* Minn. Stat. § 541.07(1).[5]

Although recognizing that the counterclaims were filed within two years of the February 2006 letter, Drill and Insignia argue that the statute of limitations actually began to run in June 2004 because Drill sent a different letter then that made the same type of statements as those made in the February 2006 letter. It relies on the "single publication rule," which directs that the statutory period for a defamation claim begins to run on the date the material was originally published. That rule, however, was intended to reflect "the facts of modern day mass publishing and duplicating," *Church of Scientology v. Minn. State Med. Ass'n Found.*, 264 N.W.2d 152, 155 (Minn. 1978), and is not applicable where, as here, the initial publication was distributed to a limited number of recipients. *See Advanced Training Sys., Inc. v. Caswell Equip. Co.*, 352 N.W.2d 1, 7 (Minn. 1984). Moreover, the rule would be inapplicable to the February 2006 letter in any event because Drill made statements in that letter pertaining to NAMI's conduct subsequent to June 2004. As a result, the Court finds that the defamation claims were timely filed and that the motion to dismiss on this basis is denied.

The Court concludes that NAMI has set forth sufficient allegations to withstand the motions to dismiss and that it can proceed on its claims against Insignia and Drill for

---

[5] Pursuant to the stipulated transfer order, the counterclaims that mirror the New York claims are considered filed on the date of the New York complaint. In addition, New York law governs those claims, but Minnesota law governs the remaining counterclaims, including those brought for slander and libel. In their opening briefs, which were filed prior to the transfer order, Insignia and Drill sought dismissal based on the statute of limitations on additional claims based on the incorrect state law governing those claims. To the extent Drill and Insignia continue to raise those arguments, the Court finds that dismissal on that basis is not appropriate.

violations of both the Lanham Act and the MDTPA as well as its claims for libel and slander.

## III.   COUNTERCLAIMS AGAINST INSIGNIA (NEW YORK CLAIMS)

NAMI also realleged in its counterclaims the claims it had originally filed against Insignia in New York.   These claims arise from allegations that Insignia persuaded retailers and packaged good companies that the exclusivity provisions in NAMI's contracts were unenforceable and that Insignia could place its products in stores simultaneously with NAMI's products.   NAMI also asserts that Insignia advertised that it could provide services in some stores, specifically Price Chopper, for the purpose of demonstrating the unenforceability of NAMI's contracts.   It filed counterclaims for (1) deceptive acts and practice under New York and Massachusetts state law, (2) tortious interference with existing business relationships, (3) tortious interference with prospective economic advantage, and (4) unfair competition.

Insignia has moved to dismiss all of the counterclaims, arguing in addition to many of the defenses already discussed[6] that NAMI has failed to set forth all the elements necessary to proceed on these claims.

---

[6] Insignia repeatedly argues that it cannot be held liable for any of the statements alleged because they were only statements of opinion and not of fact.   The Court finds that the statements at issue in these counterclaims are no different in substance than those asserted in the counterclaims asserted against both Drill and Insignia and that the motion to dismiss on this basis is therefore denied.   Insignia also argues that this set of counterclaims should be denied for failure to join indispensable parties.   For the reasons already discussed, the Court denies the motion to dismiss on this basis.

A.        **Massachusetts and New York State Law Claims For Deception**

Insignia asserts that these claims should be dismissed because NAMI failed to plead compensable damages and because NAMI has failed to plead consumer injury to proceed on the New York claim.   NAMI counters that it set forth sufficient facts to support all the elements of claims under both Massachusetts and New York law.

NAMI filed deceptive trade practices violations under both New York and Massachusetts law.   The Massachusetts statute under which this counterclaim was brought makes illegal "the use or employment by . . . a person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice." Mass Gen. Laws ch. 93A, § 11.   Similarly, New York law makes illegal "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 349(a).   To proceed on the New York claim, a claimant must also show that an injury resulted to consumers or the general public. *See New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002).

Insignia seeks dismissal of these claims on two grounds: (1) that NAMI has not pled damages to proceed on either claim and (2) that NAMI has not pled consumer injury to proceed on the New York claim.   Neither merits extended discussion.   The complaint sets forth NAMI's assertions that Insignia made false statements about its services, that those statements deceived customers, that News America suffered an injury because of the confusion in the marketplace, and that consumers suffered because Insignia's conduct resulted in fewer marketing choices and higher prices for goods.   The Court finds that these assertions are sufficient to withstand the motion to dismiss.

- 18 -

**B.    Tortious Interference with Existing Business Relationships**

NAMI also claims that Insignia is liable for tortious interference with existing business relationships because it intentionally coerced NAMI customers into breaching their contracts.  To proceed on a claim for tortious interference with an existing business relationship a complainant must set forth facts establishing there was (1) a valid contract between the complainant and a third party, (2) the other party knew about the contract, (3) the other party intentionally procured the breach of the contract (4) without justification and (5) with resulting damages to the complainant. *See Maalouf v. Salomon Smith Barney, Inc*, No. 02 Civ. 4770, 2003 WL 1858153, at *24  n.9 (S.D.N.Y. Apr. 10, 2003).

Insignia argues that this counterclaim should be dismissed because it made only statements of opinion to retailers about the enforceability of NAMI's exclusivity provisions and because its opinions about the validity of a contract between two other parties is not actionable.  The Court, however, has already determined that NAMI has set forth allegations sufficient to support its claims that the statements made by Insignia and Drill were statements of fact.  Because NAMI has set forth the remaining elements of the tort: (1) that a contract existed between it and retailers, (2) that Insignia knew about the contract, (3) that Insignia intentionally procured the breach of that contract, (4) that Insignia did so with the intent of harming NAMI, and that (5) Insignia's conduct resulted in damages, *see id.*, the Court denies the motion to dismiss this counterclaim.

C.       **Tortious Interference With Prospective Business Advantage**

NAMI also asserts that Insignia is liable for tortious interference with a prospective business advantage because Insignia deterred retailers and packaged goods companies from contracting with it.  Insignia argues that this counterclaim should be dismissed because NAMI failed to set forth all the elements necessary to proceed.

In New York, the elements of a claim for interference with a prospective business advantage require a complainant to show (1) the complainant has a business relationship with a third party, (2) the other party interfered with the relationship, (3) that party acted with the purpose of harming the plaintiff or acted with improper means to accomplish the interference, and (4) the complainant's business relationships are injured. *Scutti Enters., LLC v. Park Place Entm't Corp.*, 322 F.3d 211, 215 (2d Cir. 2003).

The only new defenses Insignia raises to this counterclaim are that it should be dismissed because NAMI has not set forth any allegation that "but for" Insignia's conduct it would have procured other opportunities and that it is subject to dismissal because Insignia has failed to plead the "improper means" element.  News America, however, alleges that its customers discontinued exclusive business with it as a result of Insignia's conduct and that it would have entered into contracts with other retailers and packaged good companies had Insignia not made the comments at issue.  Such allegations are sufficient to withstand the motion to dismiss based on failure to plead causation. *See, e.g.*, *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 96 Civ. 1103, 1996 WL 724734, at *4 n.2 (denying motion to dismiss where plaintiff alleged that "retailers who would otherwise place orders . . . are not placing such orders).

Insignia also argues that NAMI failed to plead improper means, but NAMI states in its complaint that Insignia knowingly made false statements to retailers with the intent of harming its present and future business relationships.   The Court finds these allegations sufficient to withstand the motion to dismiss.

**D.      Unfair Competition**

The final counterclaim asserted by NAMI is one for unfair competition.   It maintains that Insignia has unfairly competed in the marketplace by using confidential information to make misrepresentations to retailers and packaged good companies and by producing a press release implying that the exclusivity provisions in NAMI's contracts are not enforceable.   Insignia contends that this counterclaim should be dismissed because it is merely duplicative of the other claims asserted, but courts have permitted claims under this tort to proceed simultaneously with the other claims asserted against Insignia.   *See Excellus Health Plan, Inc. v. Tran*, 287 F. Supp. 2d 167, 170 (W.D.N.Y. 2003).   Moreover, the allegations that Insignia used a misleading press release to mislead customers and used confidential information to persuade retailers to breach their contracts are distinct to this claim.   Dismissal of this claim on the ground that it is entirely duplicative of other claims at this stage of the proceedings is therefore not appropriate. *See, e.g.*, *Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council*, 857 F.2d 55, 75 (2d Cir. 1988) (noting that "correspondence with the media" could be grounds for unfair competition claim).

The Court finds NAMI has asserted sufficient facts to support each of the counterclaims it had originally filed in New York as claims against Insignia.  Insignia's motion to dismiss these counterclaims is therefore denied.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Plaintiff/Counterclaim Defendant Insignia's and Counterclaim Defendant Scott Drill's motions to dismiss the counterclaims [Docket No. 162] are **DENIED**.

2.      Insignia's motion to include documents in the record [Docket No. 228] is **DENIED**.

3.      Insignia's motion for leave to file reply brief nunc pro tunc [Docket No. 241] is **DENIED**.


DATED:     September 28, 2007                    _____ s/ John R. Tunheim_____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                         United States District Judge