UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| INSIGNIA SYSTEMS, INC., | Civil No. 04 4213 (JRT/AJB) |
| Plaintiff, | DEFENDANT NEWS AMERICA MARKETING IN-STORE, INC.'S |
| v. | MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* NO. 6 TO |
| NEWS AMERICA MARKETING IN-STORE, INC., | PRECLUDE ARGUMENTS AND EVIDENCE APPEALING TO REGIONAL OR FINANCIAL |
| Defendant. | BIASES, OR PLAYING UPON UNEMPLOYMENT CONCERNS |

## I.     INTRODUCTION

Defendant News America Marketing In-Store, Inc. ("News America"), a New York-based corporation whose parent, News Corporation, also is headquartered in New York, is concerned that plaintiff Insignia Systems, Inc. ("Insignia"), a Minnesota corporation, will attempt to exploit regional and financial prejudices that the jury might harbor against large, out-of-state corporations.  For example, in a recent deposition to preserve testimony for trial, Insignia's senior executive, Scott Simcox, previewed this tactic by testifying repeatedly about his strong ties to Minnesota.  News America, therefore, requests that the Court preclude Insignia from making arguments or introducing evidence that play to any hometown sympathies or that highlight News America's parent's (News Corporation's) size and financial strength.  Neither is a valid consideration in the jury's deliberations.  Indeed, inflammatory appeals to such biases have repeatedly been denounced by courts as improper.

\\\LA - 091699/000569 - 476812 v5

Additionally, even though Insignia's damages claim has nothing to do with employee layoffs, Insignia's Chief Executive Officer, Scott Drill, testified at his deposition about dozens of employee layoffs that he blamed on News America. Thus, as a precautionary measure, News America requests that Insignia be precluded from introducing evidence or argument concerning any actual, contemplated or possible layoffs. Besides being completely irrelevant to Insignia's claims, such evidence and argument would unfairly prejudice News America by inviting the jury, while the country continues to grapple with the worst economic crisis and highest unemployment rates since the Great Depression, to arrive at a verdict that either "punishes" News America for allegedly causing the job losses at Insignia or attempts to prevent future layoffs through a large award of damages. The Court should preempt any such appeals to passion over reason by granting News America's motion *in limine*.

## II. INSIGNIA SHOULD BE PRECLUDED FROM APPEALING TO REGIONAL OR FINANCIAL BIASES AND FROM PLAYING UPON UNEMPLOYMENT CONCERNS.

"Evidence which is not relevant is not admissible." Fed. R. Evid. 402.[1] Moreover, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed. R. Evid. 403.

This rule affords trial courts "'very substantial discretion' in balancing between 'probative value on the one hand' and 'unfair prejudice' on the other in deciding whether

---

[1] In order to be relevant, evidence must have a "tendency to make the existence of any fact that is <u>of consequence</u> to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added).

or not to admit tendered evidence subject to objection." *City of Cleveland v. Cleveland Electric Illuminating Co.*, 734 F.2d 1157, 1163 (6th Cir. 1984); *accord United States v. Ruiz*, 412 F.3d 871, 881 (8th Cir. 2005) ("great deference is given the district court's balancing of the probative value and prejudicial impact of the evidence").  In that regard, "[u]nfair prejudice relates to the risk that the jury will decide the case on an improper basis."  *Nichols v. American National Insurance Co.*, 154 F.3d 875, 885 (8th Cir. 1998).

One such improper basis for a jury's verdict is regional bias.  For example, in *Pappas v. Middle Earth Condominium Association*, 963 F.2d 534, 535 (2d Cir. 1992), a New Jersey resident sued two Vermont corporations in Vermont federal court for injuries suffered when the plaintiff slipped and fell on an icy walkway near a Vermont ski resort. In his closing argument to the jury, defense counsel referred to the plaintiff coming "up here from New Jersey to Vermont to enjoy what we experience every year . . . without a care in the world for their own safety when they encounter what we, ourselves do not take for granted."  *Id.* at 536.  He then later asked "[w]ould we go to New Jersey and walk on a tugboat without looking where we were going?"  *Id.* at 537.

Although the district court rejected the plaintiff's argument that the summation was calculated to elicit a regional bias, finding instead that the comments were pertinent to the defendants' contributory negligence defense, *id.* at 537, the Second Circuit Court of Appeals disagreed.  *Id.* at 541.  Reversing the judgment for the defendants and ordering a new trial, the Second Circuit unequivocally stated:

> There is no doubt whatever that <u>appeals to the regional bias of a jury are completely out of place in a federal courtroom</u>.  Appeals tending to create feelings of hostility against out-of-state parties are so <u>plainly repugnant</u> that the Supreme

>  Court long ago stated their condemnation "required no comment." This sort of argument improperly distracts the jury from its sworn duty to hand down a just verdict based on the evidence presented to it.

*Id.* at 539 (emphasis added; citations omitted); *accord Hall v. Freese*, 735 F.2d 956, 961-62 (5th Cir. 1984) ("the sort of strategy employed by defense counsel has <u>no place in the federal district court</u>. Creating a hostile atmosphere toward parties on the basis that they are not local people contributes nothing -- less than nothing -- toward the search for justice and fairness and truth.") (emphasis added); *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 757-58 (6th Cir. 1980) (remarks by the plaintiff's attorney, "which were intended to inform and emphasize that [the defendant] had its corporate 'residence in another state,' [were] 'obviously designed to prejudice the jurors [and] may well have been prejudicial'").

News America expects Insignia to use the same tactics as the plaintiff in *Pappas*. At his trial deposition, Insignia's senior executive and key fact witness, Scott Simcox, testified that he is a Minnesota "native," has lived in his Minnesota home for "25 years," went to grade school and then high school in Minnesota, and attended University of Minnesota.[2] These gratuitous references to Minnesota are clearly meant to appeal to regional biases and incite prejudice against non-Minnesotans. Indeed, the Second Circuit's admonition of such tactics in *Pappas* is even more appropriate here since, unlike the *Pappas* case, where the comments arguably went to the defendants' contributory

---

[2] Rather than burden the Court with unnecessary paper, News America is not attaching the transcript of Mr. Simcox's deposition testimony, which News America is merely using as an example of the type of evidence that Insignia may seek to introduce at trial. Should the Court wish to see the testimony, however, News America would be happy to submit the relevant portions of the transcript.

negligence defense, there is no conceivable, good faith justification for any "us against them" arguments in this case.

In addition to regional bias, financial prejudice is another improper basis for a jury's verdict.  In *Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir. 1978), the plaintiff's counsel made repeated references to the defendants' size and wealth.  Rejecting the benign explanation that was subsequently proffered by the plaintiff for the remarks, the Third Circuit Court of Appeals instead found that they "were intended to arouse the prejudices of the jury . . . ." *Id.*  In so doing, the appellate court further instructed that "justice is not dependent upon the wealth or poverty of the parties and a jury should not be urged to predicate its verdict on a prejudice against bigness or wealth." *Accord City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d at 756-57 (court remanded case for new trial based on misconduct of plaintiff's counsel who, among other things, was "obviously [making] an appeal to passion and prejudice" by "inform[ing the jury] at every opportunity" of the corporate defendant's size).  That admonition is particularly apt as applied to News Corporation, which is not even a party to the lawsuit, but is merely News America's parent.

Finally, evidence or argument regarding layoffs, actual or possible, also would constitute an improper appeal to the jury's sympathies and fears.  For example, even though Insignia's damages claim has nothing whatsoever to do with employee layoffs, Scott Drill, Insignia's Chief Executive Officer, testified at deposition that News America's "anticompetitive actions" supposedly forced Insignia to "layoff" 25

employees.³ Such evidence – even if true – would not be probative of anything "of consequence" to Insignia's claims that News America excluded competition from the "in-store" advertising business and harmed Insignia's sales of "in-store" ad products.⁴ And even if the evidence were of any marginal relevance, any such benefit would be "substantially outweighed by the danger of unfair prejudice . . . ." Fed. R. Evid. 403.

Indeed, the Sixth Circuit Court of Appeals previously so concluded in a slightly different context. In *United States v. Payne*, 2 F.3d 706 (6th Cir. 1993), a defendant challenged his conviction for obstruction and desertion of mail on the ground of prosecutorial misconduct. The defendant argued that "the prosecutor's references to the plight of poor children, to Christmastime, and to the then-recent announcement by General Motors ('GM') of a 75,000-person layoff in his closing and rebuttal arguments intentionally placed before the jury facts not in evidence that were inflammatory and prejudicial." *Id.* at 711.

Although the government argued that "the comments were invited by defense counsel's presentation of its case," *id.*, the Court of Appeals concluded that the

---

³ News America also is not attaching the transcript of Mr. Drill's deposition testimony, which again is merely an example of the type of evidence that Insignia may seek to introduce at trial. As with Mr. Simcox's deposition testimony, however, should the Court wish to see Mr. Drill's testimony, News America would be happy to submit the relevant portions of the transcript.

⁴ Insignia has alleged that News America induced retailers to enter into exclusive contracts for the retailers' "in-store" advertising space that News America subsequently sold to consumer packaged goods companies, and that News America disparaged Insignia's "in-store" advertising products. (Amended Complaint, ¶ 2).

prosecutor's comments were so prejudicial as to require a reversal of the conviction. *Id.* at 716. As the court explained:

> [T]he comments had the ability to mislead the jury as well as ignite strong sympathetic passions for the victims and against [the defendant]. Occurrences like Christmas and major employee layoffs, because they affect or potentially affect such a broad scale of people, are going to invoke emotions which may cloud the jury's determination of [the defendant's] guilt. . . . In particular, the comment about [layoffs at] GM probably would have tremendous emotional impact on a jury sitting in Michigan because GM employs so many Michigan residents.

*Id.* at 712.

The prejudice to News America if Insignia were permitted to mention layoffs would be even greater. In *Payne*, the layoff reference was merely a rhetorical device – GM was not a party to that case. By contrast, Insignia is a party, and by virtue of sitting on the jury in this case, jurors will likely feel that they can do something about the layoffs: they can punish News America for allegedly hurting Insignia's business and causing it to have to implement the layoffs, and they can attempt to prevent future layoffs by awarding damages to Insignia.

Moreover, if anything, the Sixth Circuit's observation about the emotional impact of layoffs is even truer today than when the *Payne* case was decided. Over the last few years, there has been no more "highly charged public issue" than the ongoing financial crisis. *Jamison v. Storer Broadcasting Co.*, 511 F.Supp. 1286, 1294 (E.D. Mich. 1981) ("Evidence that appeals to a jury's sympathies and connects a party to a 'highly charged public issue' must be carefully evaluated under [Rule 403]"). And the public face of that crisis most recently has been the unemployment rate, which continues to soar at historic

highs, hampering the nation's return to financial health.  If the jurors have not been laid off themselves, they undoubtedly know someone who has been.

Clearly, evidence or argument concerning past or future layoffs at Insignia would be a powerful appeal to the jury's very real and understandable sympathies and fears, which is precisely what Rule 403 was intended to prevent – the invocation of emotions that will cloud a jury's deliberations.  Accordingly, because the resulting unfair prejudice to News America would substantially outweigh whatever probative value any mention of layoffs might conceivably have to Insignia's claims, such evidence and argument should be excluded as well.

### III.   CONCLUSION

News America's out-of-state headquarters, News Corporation's size and wealth, and Insignia's actual or potential layoffs are all irrelevant to this case.  The only reason for mentioning them would be to fan the flames of any prejudices and fears the jury may have.  Accordingly, the Court should preempt any such attempts to invoke the jury's passions by granting News America's motion *in limine* and precluding Insignia from making arguments or presenting evidence that appeal to such hometown sympathies, financial biases or unemployment concerns.

Dated:  November 29, 2010                                     Respectfully submitted,

                                                                By:    s/ Todd Wind
                                                                         Todd Wind (#196514)
                                                                         Nicole M. Moen (#329435)
                                                                         FREDRIKSON & BYRON

200 South Sixth Street, Suite 4000
Minneapolis, Minnesota  55402
(612) 492-7046 (phone)
(612) 492-7077 (facsimile)
twind@fredlaw.com
nmoen@fredlaw.com

Richard L. Stone (*pro hac vice*)
Kenneth D. Klein (*pro hac vice*)
Julie Ann Shepard (*pro hac vice*)
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA  90067
(310) 785-4600 (phone)
(310) 785-4601 (facsimile)
richard.stone@hoganlovells.com
kenneth.klein@ hoganlovells.com
julie.shepard@ hoganlovells.com

*Attorneys for Defendant*
*News America Marketing In-Store, Inc.*