## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| INSIGNIA SYSTEMS  INC, | Civil No. 04-4213 (JRT/AJB) |
| Plaintiff, | |
| v. | **ORDER** |
| NEWS AMERICA MARKETING IN-STORE, INC, | |
| Defendant. | |

Stephen Wood and Julian Solotorovsky **KELLEY DRYE & WARREN LLP**, 333 West Wacker Drive, Suite 2600, Chicago, IL 60606; William C. MacLeod, **KELLEY DRYE & WARREN LLP,** 3050 K Street NW, Suite 400, Washington, DC 20007; and Kathleen D. McMahon, **BEST & FLANAGAN LLP**, 225 South Sixth Street, Suite 4000, Minneapolis, MN 55402-4690, for Insignia Systems Inc.

David A. Ettinger, **HONIGMAN MILLER SCHWARTZ AND COHN,** 2290 First National Building, 660 Woodward Avenue, Detroit, MI 48226; Richard L. Stone, **HOGAN LOVELLS US LLP**, 1999 Avenue of the Stars, Suite 1400, Los Angeles, CA 90067; and Todd A. Wind and Nicole M. Moen, **FREDRIKSON & BYRON, PA**, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402-1425, for News America Marketing In-Store, Inc.

Insignia Systems, Inc. ("Insignia") filed this lawsuit against News America Marketing In-Store, Inc. ("News") in 2004 alleging violations of the Sherman Act, the Lanham Act, the Minnesota Antitrust Act, and the Minnesota Deceptive Trade Practices Act. The complaint alleges that News engaged in disparaging conduct, and anti-competitive behavior that damaged Insignia's sales and value. The parties filed thirteen motions in limine, several of which were the subject of a hearing on January 28, 2011.

At the hearing, the Court denied News' Motion *In Limine* for Preapproval to Provide Certain Information and Brief Excerpts from Videotaped Testimony in Its Opening Statement (Docket No. 721) to the extent it sought approval to provide certain information to the jury, and deferred judgment on the use of video excerpts from deposition testimony until such testimony was designated by News. The Court has not addressed News' Motion *In Limine* to Exclude Evidence of and References to Released Conduct Motion (Docket No. 699) in this order, as it will be addressed in a separate order.

## DISCUSSION

### I.     PLAINTIFF'S MOTIONS IN LIMINE

#### A.      Motion to   Exclude Evidence of or Reference to the Possibility of Treble Damages

Insignia asks the Court to exclude at trial evidence of, or references to, the Court's statutory duty under Section 4 of the Clayton Act, 15 U.S.C. § 15, and statutory discretion under the Lanham Act, 15 U.S.C. § 1125(a), to treble the amount of damages sustained by Insignia. *Arnott v. Am. Oil. Co.*, 609 F.2d 873, 889 n.15 (8th Cir. 1979); *Shearer v. Porter*, 155 F.2d 77, 82-83 (8th Cir. 1946). News does not object to such an order. Therefore the Court grants Insignia's motion.

The Court will also preclude Insignia from mentioning it can recover attorney fees, as such a determination is within the discretion of the Court, and not committed to the jury. *HBE Leasing Corp. v. Frank*, 22 F.3d 41, 46 (2d Cir. 1994) (citing *Arnott*, 609 F.2d at 889 n.15) ("[C]ourts have uniformly concluded that mentioning treble damages

and attorneys fees to the jury is improper."); *Rosebrough Monument Co. v. Memorial Park Cemetery Ass'n*, 736 F.2d 441, 446 (8th Cir. 1984) (providing that awarding of attorney fees in an antitrust action rests in discretion of the district court).

**B.      Motion to Exclude References to the Proposed Senior Management Litigation Incentive Plan**

Insignia brings this motion to exclude evidence and testimony relating to a plan by Insignia to retain senior management by tying financial incentives to the outcome of this litigation.  In 2007, Insignia filed a proxy statement disclosing the Senior Management Litigation Plan ("Plan"), which would make certain unnamed executives eligible for bonuses following a successful resolution of this litigation against News.  The total amount payable to all participants under the Plan was set at 5% of total recoveries over $10,000,000.  The Plan stayed in effect for about a year and a half, and was eventually terminated by Insignia's board of directors on December 8, 2009, before any payments were made.  Prior to the termination of the Plan, News took depositions of, among others, Insignia's President and CEO, Scott Drill, Scott Simcox (Senior Vice President of Marketing Services), Justin Shireman (Chief Financial Officer), Tom Lucas (Vice President of Operations), Al Jones (Senior Vice President of Retail and Consumer Packaged Goods  Sales), and Richard Grill (Vice President of Internal Technology).  At the time of their depositions, the above-named executives were aware of the compensation plan, and believed that they were likely among those who would benefit from it.

The existence of the Plan, and the executives' awareness of its direct financial benefit for them while they estimated damages and lost profits for this litigation, bear directly on their credibility. *See CardioVention, Inc. v. Medtronic, Inc.*, 483 F. Supp. 2d 830, 835 (D. Minn. 2007) ("The fact that [Plaintiff's] three main shareholders have a direct financial interest in the outcome of the case is relevant to their credibility as trial witnesses."); *see also Crowe v. Bolduc*, 334 F.3d 124, 132 (1st Cir. 2003) (stating that evidence that a trial witness has a financial incentive in the outcome of the trial is "classic evidence of bias, which is routinely permitted on cross-examination.").

Insignia's argument that the Plan was never implemented (in that no money was paid) is unavailing: at the time depositions were taken, the Plan existed, the executives were aware of it, and they had financial incentives tied to the successful outcome of the litigation. The Court finds evidence of the Plan not unduly prejudicial, and highly relevant, as it bears directly on various trial witnesses' credibility and motivations for their testimony. The Court denies Insignia's motion. *See* Fed. R. Evid. 401, 403.

### C.      Motion to Exclude Certain Opinions and Testimony of Arthur B. Cobb

Insignia seeks to exclude opinions and testimony of Arthur Cobb ("Cobb") criticizing the work of Dr. Thomas R. Overstreet, one of Insignia's expert witnesses, because Cobb is not qualified to offer an econometric opinion, or to criticize Overstreet's multiple regression analysis. News does not object to the relief sought by Insignia, as it does not intend to present such testimony from Cobb. Because Insignia seeks to exclude

only a part of Cobb's testimony, the Court will grant the motion only as to Cobb's opinions regarding Overstreet's statistical analyses.

## II.   DEFENDANT'S MOTIONS IN LIMINE

### A.   Motion to Preclude Evidence of Third-Party Lawsuits

News seeks an order excluding evidence of prior lawsuits brought by third parties against News, and any allegations, judgments, settlements, or verdicts from those lawsuits.  News specifically seeks to exclude such evidence from lawsuits between News and (1) Valassis Communications, Inc.; (2) Floorgraphics, Inc.; and (3) Theme Promotions, Inc.  "[C]omplaints, and the charges and allegations they contain, are hearsay under the Federal Rules of Evidence."  *T.I. Const., Co. Inc. v. Kiewit Eastern Co.*, Civ. A. No. 91-2638, 1992 WL 382306, at *4 (E.D. Pa. Dec. 10, 1992) (citing *Century '21' Shows, v. Owen*, 400 F.2d 603, 610 (8th Cir. 1968)).  Allegations in prior lawsuits are clearly hearsay, and should be excluded if offered to prove the truth of the matter asserted.  Fed. R. Evid. 802.  However, testimony and other evidence from prior lawsuits, if offered for a reason other than to prove the truth of the matter asserted, are admissible if relevant.  Fed. R. Evid. 803.  At a hearing on January 28, 2011, Insignia clarified that it does not seek to introduce allegations, verdicts, judgments, or settlements, it instead seeks only to introduce evidence and testimony from prior lawsuits.  Thus, the Court will deny the motion and address appropriate objections related to these issues if they arise during trial.

**B.      Motion Relating to Undisclosed Damages Theories**

The Court defers a decision on this motion until Insignia has provided to News the information required by the Court at the January 28, 2011 hearing.

**C.      Insignia's Motion to Exclude Any Evidence That Free-Standing Inserts Are Part of the Relevant Product Market and News' Motion to Exclude Evidence Relating to Sales of Free-Standing Inserts**

News moves to exclude evidence relating to sales of Free-Standing Inserts ("FSIs") (loose coupons placed in newspapers and magazines).   (Docket No. 711.) Relatedly, Insignia sought to exclude evidence that FSIs are part of the relevant antitrust product market because such an argument is collaterally estopped based on recent previous litigation.   (Docket No. 734.)   However, after a hearing, Insignia withdrew its motion.   (Docket No. 814.)   Thus, the Court denies Insignia's motion as moot, and only addresses News' motion.

News argues that if it concedes FSIs are not part of the relevant product market, then the Court should exclude evidence of its conduct relating to FSIs as irrelevant. News argues that FSIs are not relevant to this case, that Insignia has based its claims entirely on News' course of conduct in an alleged in-store products market, and that Insignia only sells in-store products.   It further argues that testimony regarding FSIs is irrelevant because Insignia has provided no evidence of anticompetitive bundling, and no claim for damages based on such bundling.

The testimony Insignia seeks to introduce comes from a lawsuit between News and Valassis Communications, Inc., in which the latter accused News of unfair

competition based on arguments that News leveraged its monopoly over in-store products to unfairly compete in the FSI market. (Case No. 07-706645-CZ, Wayne Cnty. Cir. Ct.) In *Valassis*, the jury reached a unanimous verdict awarding Valassis $300 million in damages in 2009. (Trial Tr. 9:3-12:10, Macgregor Decl. Ex. W, Docket No. 771.) The testimony Insignia seeks to introduce comes from various Valassis employees, and past testimony from the *Valassis* trial, such as the following from Christine Hall of Pepsi/Quaker, a consumer packaged goods ("CPG") representative:

> Q:   [D]id you ever encounter News America on linking their free-standing inserts and in-store proposals?
>
> A:   Yes
>
> *    *    *
>
> Q:   And can you tell the jury what your reaction was to that tactic?
>
> A:   I did not think it was right. I viewed free-standing inserts and in-store as being very, very different. I felt that Valassis – or that News America had somewhat of a monopoly on in-store so you were pretty much forced to go with them in-store. Leveraging their in-store to get FSI I did not think was fair and I didn't like it.

(Hall Trial Tr. 185:1-19, June 11, 2009, Macgregor Decl. Ex. AA.) Another CPG representative, Debra Lucidi, provided testimony regarding negotiations with News over FSIs:

> Q:   Tell me what you mean by the approach that News America was taking.
>
> A:   When we requested a proposal, we requested a proposal for in-store – or for FSIs only. News America would not give us a proposal for FSIs only. They included a proposal for in-store with FSIs only if we didn't give them the FSI business, the in-store rates were going to increase.

(Lucidi Trial Tr. 201:14-21, June 4, 2009, Macgregror Decl. Ex. BB.)   Further, Alan Schultz, CEO of Valassis, testified that the reason Valassis brought the litigation was directly related to News' in-store and FSI sales strategies:

> Q:   [W]hat was your involvement in the [decision to bring a lawsuit against News]?
>
> A:   Sharing the discussion on what we felt News America or News was doing to use their in-store monopoly power to leverage FSI negotiations, to take away FSI business from Valassis, or drive Valassis' prices down in the FSI business in order to use their in-store monopoly to basically create an FSI monopoly . . . .

(Shultz Trial Tr. 238:21-239:4, June 22, 2009, Macgregor Decl. Ex. X.)

The Court finds that such testimony is relevant because it makes the existence of a News monopoly over in-store products more probable than it would be without the evidence. Fed. R. Evid. 401.   Generally, evidence that News leveraged its dominance in the in-store products market to require FSI purchases is relevant to demonstrating the scope and power of News' in-store product market activities.   However, the Court also finds that permitting Valassis witnesses to testify that News acted anti-competitively in the sale of FSIs could be unduly prejudicial as to whether News has acted anti-competitively in this case.   *See* Fed. R. Evid. 404.   Thus, the Court will only allow testimony related to the *Valassis* case to the extent it demonstrates that News could influence the in-store products market, not to show actions in conformity with prior anti-competitive conduct.   *See id.*

**D.      Motion to Exclude CPG Hearsay at Trial**

News brings this motion to preclude the introduction of certain statements from CPGs, allegedly made to employees of Insignia. News does not identify any specific testimony it would like the Court to exclude, beyond the broad category of "hearsay testimony from CPGs." "Orders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Though News identifies portions of deposition testimony that, if introduced at trial, would likely constitute hearsay, Insignia has not stated whether it will offer the testimony, and it is far from clear that every statement made by a CPG to an employee of Insignia would be hearsay. Thus, the Court will deny the motion, and address an appropriate objection if one is made at trial.

**E.      Motion to  Preclude Arguments and Evidence Appealing to Regional or Financial Biases, or Playing Upon Unemployment Concerns**

News argues that Insignia will attempt to exploit regional and financial prejudices in presenting evidence that is irrelevant and will unduly prejudice the jury, including through the deposition testimony of Insignia executive Scott Simcox, who has lived in Minnesota for many years. Fed R. Evid. 402, 403. In support of its concern that such statements will prejudice the jury, News points to *Pappas v. Middle Earth Condominium Assoc.*, 963 F.2d 534 (2d Cir. 1992), in which the Second Circuit found bias where during defense counsel's closing argument, he referenced the plaintiff "coming up" from New Jersey to Vermont, and made other disparaging regionally based remarks. *Id.* at 539

("There is no doubt whatever that appeals to the regional bias of a jury are completely out of place in a federal courtroom."). However, in *Pappas* and the cases cited by News, the objectionable behavior was **counsel's** arguments and statements to the jury preying on regional bias during **opening and closing arguments**. News' motion is focused on **evidence** discussing regional relationships, which no cited authority has excluded. The Court denies News' motion to the extent it specifically refers to the testimony of Simcox, and will address appropriate objections regarding regional bias if they arise.

News also raises concerns that Insignia will attempt to exploit financial prejudices to aid its case, which it claims is unduly prejudicial. Fed. R. Evid. 403. This concern is based on expected testimony related to News' size and wealth, and references to News' parent, News Corporation. *Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir. 1978) (finding improper counsel's reference to the wealth of defendants as relative to poverty of plaintiff in a wrongful death action).

*Draper* was a wrongful death action in which the relative wealth of the defendant was not material to a wrongful death determination. By contrast, the relative size and wealth of News could be related to its market power. Therefore, the Court will deny the motion. However, as there is a potential for the information to be used in an unduly prejudicial manner, plaintiff is advised that evidence of the size or financial position of News cannot be used as the sole justification for a particular damages calculation.

Finally, News argues that evidence of layoffs at Insignia should be excluded because in a poor national economic climate, such evidence would play to a jury's sympathies and fears which are inappropriate bases for jury consideration. Evidence of

layoffs walks a fine line on relevance, and could be unduly prejudicial and intended to inflame the passions of the jury. *See* Fed. R. Evid. 401, 403. Thus, the Court will grant the motion as to layoffs, which here could only be used to show the effect, as opposed to the fact, of a monopoly.

**F.      Motion to Exclude Irrelevant, Inadmissible, and Unfairly Prejudicial References to an Incident Involving a Fishing Pole**

This motion relates to an incident in 2001 in which a News executive involved in negotiations to win business with Winn-Dixie, a major retail chain in the South, allegedly gave a Winn-Dixie employee a $1200 fly-fishing rod. News argues that Insignia should be barred from introducing evidence at trial related to the "fishing-pole incident" because: (1) the November 14, 2002 release released News for liability for allegedly anti-competitive conduct prior to that date; (2) evidence of the incident is not relevant to any issue properly in this case; and (3) evidence of the fishing-pole incident would be unduly prejudicial.

It is difficult to see how an alleged bribe of a company in 2001 is relevant to the antitrust claims presented in this case, none of which include charges of bribery. Though Insignia argues that issues such as bribery are probative of the generally illegal conduct engaged in by News, this isolated event is too attenuated to be relevant, or overcome Rule 403's balancing test for unduly prejudicial evidence. *See* Fed. R. Evid. 403 ("[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."). Though under different circumstances the incident may have been admissible under Rule 404(b) to show motive, intent, and lack of mistake,

because there is no allegation of a post-release bribe, Rules 401 and 403 require exclusion, and the motion will be granted.

### G.    Motion to Exclude Irrelevant, Inadmissible and Unfairly Prejudicial Testimony and Notes of Debra Lucidi

News requests that the Court exclude the testimony and notes of Debra Lucidi ("Lucidi"), a former employee of Sara Lee ("SL").  Lucidi worked at SL from November 2001 until March 2006.  For part of that time she was the director of business services procurement and was responsible for SL's procurement of FSIs; Lucidi never worked on in-store advertising.  Lucidi provided testimony in the *Valassis* case related to FSI proposals from Valassis and from News.  She testified that News submitted a proposal combining both FSI and in-store advertising.  Lucidi said "she did not appreciate" News' tactic of "holding [in-store] over [SL] saying if you don't give us your FSI business, we will keep your prices high and potentially raise them on the in-store business."  (Lucidi Dep. 203:22-204:4, June 4, 2009, Shephard MIL 9 Decl. Ex. A, Docket No. 728.)  Lucidi wrote an email attempting to get feedback from others at SL about the relationship with News, and plans for the following year.  Part of the feedback she received included a phone conversation with an SL employee about which Lucidi testified she contemporaneously typed notes.  (Lucidi Dep. 205:8-22.)  The notes provide, in part:

> 8/26 – off the record
>
> Was so pissed at them when they raised rates because they did not keep FSI.
>
> * * *

> Adding insult to injury, have had huge issues related to accuracy of placement of in-store vehicles.  Feels like they are raping us and they enjoy it and there is no desire to work with us in partnership . . . .
> In-store will likely increase and FSI may decrease.

(Lucidi Dep. Ex. 4.)

Lucidi subsequently left SL and testified that she did not know what happened to SL's in-store business.  News argues that Lucidi's testimony is irrelevant, that notes of her phone conversation are double-hearsay, and the inflammatory language of the notes would be prejudicial if introduced to a jury.

### 1.      Relevance

Irrelevant evidence is inadmissible, and relevant evidence is any evidence that has the "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401, 402.  News argues that Lucidi's testimony cannot be considered relevant because she never worked on in-store advertising.  (Lucidi Trial Tr. 41:22-42:1, June 8, 2009, Shephard MIL 9 Decl. Ex. B) ("Q: Exactly how are in-store rates for providing News America's in-store products and services calculated? A: I have no idea. I never worked on in-store.").

Lucidi testified about how News' handling of SL's in-store business related to the in-store market.  She specifically describes her frustration with News, saying "I did not appreciate this tactic."  (Lucidi Dep. 203:22.)  The "tactic" was that after SL switched to Valassis to provide FSIs, News responded by increasing SL's in-store rates, which Lucidi testified they were forced to pay because "[t]here was no other option for in-store

promotions." (*Id.* 204:15-17.) Lucidi further stated that "I know that nobody else does exactly what News America does, but we have got to have other options. They are strong arming us . . . ." (Lucidi Trial Tr. 22:1-3, Macgregor Decl. Ex. DD.) Lucidi's interactions with News on FSIs relates to SL's overall business dealings with News, and Lucidi's testimony that SL felt "strong-armed" because no one else does what News does is relevant evidence of News' influence in the relevant market. The Court will thus deny News' motion insofar as it seeks to preclude Lucidi's testimony on relevance grounds.

### 2.      Notes are Inadmissible Hearsay Evidence

Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). "Hearsay is not admissible except" as provided by several exceptions to the rules. Fed. R. Evid. 802. News argues that Lucidi's notes are hearsay, and because the notes purport to document an out-of-court conversation, they also constitute double-hearsay. Further, News argues that the notes do not fit into either the business records exception, or state-of-mind exception to the hearsay exclusionary rule.

An exception to the hearsay rule is the "business records" exception which provides that a document kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the document, can be admissible. Fed. R. Evid. 803(6).

Lucidi testified that the email documenting the phone conversation reflected "what I was being told as the person was talking to me." (Lucidi Dep. 205:17-22.) The

conversation and notes appear to have been created in connection with a business conversation, and it is reasonable that those in business meetings often keep notes of those meetings in the regular course of business.  (Trial Tr. 54:10-57:24, May 26, 2009, Macgregor Decl. Ex. OO); *see also Grogg v. Mo. Pac. R.R. Co.*, 841 F.2d 210, 213 (8th Cir 1988) ("If both the source and recorder of the information contained in Missouri Pacific's document were acting in the regular course of Missouri Pacific's business, the multiple hearsay is excused by rule 803(6).").  Further, both parties to the conversation were discussing issues relevant to their work, and nothing in the notes or testimony indicates that the conversation strayed in any way beyond a strictly business discussion. The Court finds the document admissible as a business record under Rule 803(6) and denies News' motion.  The Court further denies the motion to exclude based on the state-of-mind hearsay exception as moot, because the document can be admitted under the business records exception.

Finally, News argues that because the term "raping" is used, the document will be unfairly prejudicial if introduced.  Fed. R. Evid. 403.  This Court agrees with the judge from the *Valassis* case that jurors applying common sense to the facts will not understand the term to be the literal act of rape, and can draw from the strong language relevant determinations regarding the credibility and opinions of Lucidi.

## ORDER

Based on the foregoing of all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Insignia's Motion to Exclude Any Evidence of or Reference to the Possibility of Treble Damages [Docket No. 730] is **GRANTED**.

2.      Insignia's Motion to Exclude Certain Opinions and Testimony of Arthur B. Cobb [Docket No. 732] is **GRANTED** as to Cobb's opinions of Dr. Overstreet's econometric and multiple regression analyses.

3.      Insignia's Motion to Exclude Any Evidence That Free Standing Inserts are Part of the Relevant Product Market [Docket No. 734] is **DENIED as moot**.

4.      Insignia's Motion to Exclude References to the Proposed Senior Management Litigation Incentive Plan [Docket No. 736] is **DENIED**.

5.      News' Motion *In Limine* No. 2 To Preclude Evidence of Third Party Lawsuits [Docket No. 702] is **DENIED**.

6.      News' Motion *In Limine* No. 3 Relating to Undisclosed Damages Theories [Docket No. 705] is **DEFERRED** pending further action by plaintiffs as directed by the Court.

7.      News' Motion *In Limine* No. 4 to Exclude CPG Hearsay at Trial [Docket No. 708] is **DENIED**.

8.      News' Motion *In Limine* No. 5 to Exclude Evidence Relating to Sales of Free Standing Inserts [Docket No. 711] is **DENIED**.

9.      News' Motion *In Limine* No. 6 to Preclude Arguments and Evidence Appealing to Regional or Financial Biases, or Playing Upon Unemployment Concerns [Docket No. 714] is **GRANTED in part** and **DENIED in part** as follows:

a.      The motion is **GRANTED** as to evidence of layoffs at Insignia.

b.      The motion is **DENIED** in all other respects.

10.     News' Motion *In Limine* No. 7 to Exclude Irrelevant, Inadmissible, and Unfairly Prejudicial References to an Incident Involving a Fishing Pole [Docket No. 716] is **GRANTED**.

11.     News' Motion *In Limine* No. 9 to Exclude Irrelevant, Inadmissible and Unfairly Prejudicial Testimony and notes of Debra Lucidi [Docket No. 726] is **DENIED**.

DATED: February 3, 2011                    _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                          JOHN R. TUNHEIM
                                             United States District Judge